CARROLL, Judge.
The appellant, Faber, Coe & Gregg of Florida, Inc. made a bulk purchase on January 31, 1961, of the furniture, fixtures, merchandising inventory and certain motor vehicles from Montsalvatge & Co. of Miami, Inc., a dealer in tobacco products. Tangible personal property ad valorem taxes levied thereon by Dade County and the City of Miami for 1960 were unpaid, and that fact was known to the bulk purchaser. Such taxes constituted a lien on the personal property which followed it into the hands of the bulk purchaser, and also when resold by the latter.
Following the bulk purchase appellant proceeded to conduct the business, and a year later when the tax collectors announced intention to enforce the lien for such taxes, against the appellant’s property, this suit was filed in March of 1962 to enjoin such action, and a restraining order was granted pendente lite. The complaint alleged that the property acquired in the bulk purchase had been resold except for certain fixtures and vehicles, and appellant deposited $8,000 in the registry of the court to secure payment of the taxes to the extent of the value of any of such property found to remain in possession of appellant. Defendants answered and counterclaimed for payment.
Trial before the chancellor disclosed that certain fixtures remained in the possession of the appellant; that the rate of turnover in sales of the merchandise inventory was as much as 90% a month and complete in sixty days, and that more than a year of such operation had elapsed; that on the bulk purchase on January 31, 1961 certain *53 motor vehicles were received and that all such vehicles were sold by the bulk purchaser to an automobile dealer, having been traded in when new vehicular equipment was purchased in April of 1961.
The final decree entered in April of 1964 held that fixtures valued at $2,889.86, acquired on the bulk purchase, remained in possession of the appellant and were subject to the lien for taxes (which is not disputed by the appellant) ; that through the doctrine of commingling, the merchandise stock of the appellant valued at more than $20,000 was subject to the lien of the 1960 personal property taxes; and that the money deposited in court would be substituted for the sold vehicles valued at $9,700. Also, in the decree it was held that property of the appellant should be subjected to payment of the taxes.
On this appeal appellant makes four contentions. First, it is argued that the motor vehicles were not subject to the tax lien. Section 200.01, Fla.Stat., F.S.A. excepts motor vehicles from tangible personal property ad valorem tax, but § 200.02 makes such taxes a lien on all personal property of the taxpayer. See Opinion of Attorney General, No. 050-378, August 4, 1950.
Appellant’s second contention is that a bulk purchaser is not personally liable for tangible personal property ad valorem taxes levied on the property when it was in the hands of the seller. That contention appears settled in appellant’s favor beyond the need for extended discussion. Levy of taxes on personal property does not create a personal obligation on the owner. A fortiori it will not impose a personal obligation for the payment of such taxes upon a purchaser. See Opinion of Attorney General, No. 055-47, March 3, 1955, stating in part as follows:
“ * * * It seems possible that there may be two liens (§ 192.21, F.S.) (1) a specific lien against the tangible personal property assessed, and (2) a lien against all the personal property of the taxpayer in the county where assessed (§ 200.02, F.S.) which language may include personal property not assessed and the language seems broad enough to include intangible personal property, although the tax warrants to be issued and enforced under § 200.27, F.S., merely mention tangible personal property. Each of these liens appears to attach as of January 1 of the tax year. A tax lien is a creature of statute, and, unless expressly made so by statute, a tax is not a lien on property (84 C. J.S. [Taxation] 1180, § 585). In this state tax liens are creatures of statute, and are not recognized by the state constitution (State [ex rel. Hurner] v. Culbreath, 140 Fla. 634, 192 So. 814, text 818; Prince Hall Masonic Building Ass’n v. [City of] Jacksonville, 149 Fla. [109] 199, 6 So.2d 250, text 253), and exist only in accordance with the terms of the statute ([City of] St. Petersburg v. Fiore, 160 Fla. 106, 33 So. 2d 852, text 854). We find nothing in the statutes making an owner personally liable for the payment of taxes levied and assessed against his tangible personal property, neither do we find any statute making his real property liable for taxes levied and assessed against tangible personal property. * * *»
Further in that opinion, with reference to the effect of sale of taxed property, it was said:
“* * * ‘The purchaser, however, incurs no personal liability for taxes assessed against his seller, even though he takes subject to lien for their payment. The lien is the only charge against him and extends only to the property brought; it does not attach to any other goods he may possess or acquire. Moreover, the lien is only against the specific property in the hands of the purchaser, where there has been an intermingling with other property.’ Where there has been an intermingling by the purchaser with *54 other like or similar property it may be seized, unless the purchaser will point out the portion of the intermingled property subject to the tax lies. (51 Am.Jur. 885, § 1013).”
For a third point the appellant contends, and we agree, that the trial court erred in holding the merchandise on hand in 1962 was subject to the tax lien. Appel-lees place reliance on the last sentence in the opinion of the Attorney General (No. 055-47) as quoted above, which refers to intermingling.
Appellant does not dispute the theory announced there as to the effect of intermingling merchandise acquired subject to a tax lien with similar goods by a purchaser, but appellant contends its applicability depends on the continued possession of some of the purchased goods, and that here the record establishes the merchandise acquired on the bulk sale was resold by 1962. Appellant points to the evidence that the turnover in such merchandise was approximately 90% per month, and sixty days produced a complete turnover. Appellees argue those are general estimates, and that certain slow moving articles would be carried over beyond such periods of time. However, it would appear unreasonable and unrealistic to hold that a stock of merchandise of a class having a 90% turnover every thirty days, acquired on January 31, 1961, would not have been exhausted in due course of such business in the period of more than a year by the time suit was filed on March 27, 1962. Appellees cite two cases (Robinson v. Youngblood, 54 Ind. App. 669, 103 N.E. 347, and Mills v. Thurston County, 16 Wash. 378, 47 P. 759) in which personal property subject to a tax lien when purchased was commingled with property of the purchaser, and the lien was held enforceable against the commingled whole. However, in those cases it appeared that at the time of enforcement the commingled property included property subject to the tax lien. In addition, it was held in the Robinson case that the right of the tax collector to enforce the lien against the commingled property was subject to privilege of the owner, if he could do so, to show which of the commingled property was subject to the tax lien, and which part thereof was after acquired and not subject to the lien. And in Mills v. Thurston County, supra, the opinion disclosed the owner made no contention “that there was not enough remaining of the original stock from which to make the amount of the tax penalties, etc.”
In the instant case, in view of the showing that the stock in trade acquired on the bulk purchase had been disposed of, to allow enforcement of the delinquent tax against other goods of the appellant would deprive appellant of property without due process of law and enforce a personal obligation where the law imposes none. We hold that the appellant’s third contention has merit, and that the decree was in error in subjecting the appellant’s 1962 stock in trade to the lien of the 1960 taxes.
Appellant’s fourth point challenges the ruling of the chancellor allowing the tax collectors to resort to the money deposited in the registry of the court for payment of the lien, as a substitute for levy and sale of the motor vehicles. In the complaint filed by appellant on March 27, 1962, it was alleged that “there remains only in the possession of the plaintiff out of said bulk sale vehicles (rolling stock) and certain furniture and fixtures.” The evidence established that motor vehicles having a wholesale value of $9,700 were included in the bulk purchase, and that within three months they were resold to an automobile dealer upon purchasing new equipment. There was no question here of an attempt on the part of the plaintiff to conceal the sale of the vehicles.
The trial court allowed the plaintiff to-amend to conform to the proof which showed plaintiff had resold the vehicles in April of 1961, but ruled that the plaintiff’s $8,000 deposit in court should be substituted for the *55 sold vehicles, and ordered the money paid over to the tax collectors.
The 1960 taxes on the Montsalvatge personal property (other than on the vehicles in question) became a lien on January 1, 1960. Such taxes became payable on November 1, 1960, and delinquent on April 1, 1961. The bulk sale took place January 31, 1961. The vehicle could have been seized for collection of the defaulted taxes when delinquent in 1961 while they remained in the possession of the appellant, or followed into the hands of new purchasers after being resold. The contention of appellees that the tax collectors were hindered in collecting the taxes by the allegation in the complaint that “vehicles” were still possessed, implies that but for such allegation the tax collectors would have promptly sought out the (undescribed) vehicles and levied upon them. If the vehicles could have been located and levied upon at the time the complaint was filed in March of 1962 there is no showing they were not equally discoverable and amenable to seizure later when the evidence was presented that appellant had sold them. There is merit to the appellant’s contention that there was no basis in law for the chancellor to impose personal liability on the appellant for the payment of the taxes up to the value of the vehicles which it had sold previously, simply because of the mistaken allegation, in 1962, that “vehicles” were still in its possession. The attempt of the appellees in their brief to support that ruling of the chancellor was indeed meager where it was said:
“The lower court Chancellor’s ruling that because of the deviation from the complaint any sums of money in the registry of the court will stand to satisfy the lien was within his judicial discretion, and the plaintiff has failed to cite any case where the Chancellor abused his discretion.”
The personal property acquired by the appellant on the bulk purchase was subject to a lien for tangible personal property ad valorem taxes previously assessed and levied thereon when owned by appellant’s predecessor in title. The vehicles included in the purchase were not subject to such taxation, but the motor vehicles, as well as other personal property of the prior owner were subject to a lien to secure payment of the personal property taxes. Appellant, on the bulk purchase, took the property, including the motor vehicles, subject to the tax lien, but there was no personal obligation on appellant to pay those taxes, nor was the other property (or money) of the bulk purchaser subject to seizure or execution for payment of such prior taxes on the property which it had purchased. Upon sale by the appellant of the property which was subject to the tax lien, the lien thereon was not extinguished and could be enforced against such property when and where found thereafter. The injunction obtained by appellant against levy on its property for payment of such taxes was properly issued, and it was established that the property acquired on the bulk purchase had been resold by appellant by the time of the commencement of the suit, except for certain furniture or fixtures the value of which was fixed at $2,889.86. On the defendant’s counterclaim, that sum of $2,889.86 is the amount payable to defendants from the monies deposited in court.
Accordingly the decree is reversed, except as to the direction to pay to appellees from the monies in the registry of the court the value of the fixtures still possessed by appellant amounting to $2,889.86. The cause is remanded with directions to revise the decree to require such payment to appellees, and to order ,the balance of the money deposited in the registry of the court returned to the appellant.
Affirmed in part, reversed in part and remanded with directions.