# CHAPMAN v. ZOBELEIN.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 200. Submitted March 11, 1915.—Decided April 5, 1915.

An issue as to the invalidity of a tax levy merely because excessive does not raise a Federal question.

A statute providing for the sale of property for taxes giving an opportunity to be heard as to the fairness of the original assessment and providing notice be given of the place and time of sale with a right of redemption for five years, does not deprive the owner of his prop-

erty without due process of law within the meaning of the Fourteenth Amendment and so *held* as to § 3897 of the Civil Political Code of California.
19 Cal. App. 132, affirmed.

THE facts, which involve the constitutionality under the due process of law provision of the Fourteenth Amendment of certain provisions under the tax law of the State of California, in regard to amount of property and its sale for taxes, are stated in the opinion.

*Mr. Ernest E. Wood,* with whom *Mr. Charles Lantz* was on the brief, for plaintiff in error.

*Mr. Edward F. Wehrle* for defendant in error.

MR. JUSTICE LAMAR delivered the opinion of the court.

The laws of California provide a means by which the owner of property can be heard before the Board of Equalizers as to the fairness of the tax assessment. If no objection is made and the taxes are not paid a delinquent list is published. If default still continues the property, instead of being offered to the highest bidder, is sold to the State which holds the 'absolute title as of the date of the expiration of five years from the time of the sale.' During that period the owner has the right to redeem by paying the original and accrued taxes, penalties and interest. It is, however, not the policy of the State to retain separate parcels of land; and if the owner does not redeem within the five years and if the State has not otherwise disposed of the same the statute provides that the land or so much thereof as the Controller may think necessary shall after public advertisement and notice to the owner be sold to the highest bidder.[1]

---

[1] 3897. "Whenever the State shall become the owner of any property sold for taxes and the deed to the State has been filed . . . the Controller may thereupon by a written authorization direct the

Under these laws an assessment of $1.80 was made against a lot in Los Angeles standing in the name of Givens. It was regularly and duly sold on July 1, 1899. A certificate was made and recorded, which recited that the lot had been sold to the State for $2.51 and that its title would become absolute on July 2, 1904, unless in the meantime redeemed as provided by law. There was no offer to redeem, and in January, 1905, the Controller having determined that past due and accrued taxes, penalties and costs amounted to $16.19, directed the County Tax Collector to sell the lot to the highest bidder for cash. After the required publication and notice by mail, the property was on February 11, 1905, sold to Zobelein, for the sum of $166. A deed was made to him and the proceeds of the sale deposited with the Treasurer for the use of the State and County as provided by law.

On March 19, 1908, William Chapman claiming to be the owner of the lot made a tender of the original and accrued taxes, penalties and interest to date. The tender having been refused he filed a bill asking that his title be quieted and that Zobelein's tax deed be canceled. On the trial Chapman offered evidence to show that there were

tax-collector . . . to sell the property or any part thereof as in his judgment he shall deem advisable in the manner following: he must give notice of such sale by first publishing a notice for at least three successive weeks . . . such notices must state specifically the place . . . day and hour of sale . . . a description of the property . . . a statement of all the delinquent taxes, penalties, costs, interest and expenses up to the date of such sale . . . the name of the person to whom the property was assessed. . . . Said notice shall also embody a copy of the authorization received from the controller. It shall be the duty of the tax-collector to mail a copy of said notice, postage thereon prepaid, to the party to whom the land was last assessed next before the sale, at his last known post-office address. At the time set for such sale, the tax-collector must sell the property described in the controller's authorization and said notices, at public auction to the highest bidder for cash in lawful money of the United States. . . ."

those present at the sale who would have been willing to pay $16.19, the full amount of the tax, for a strip ten feet off of the easterly or northern end of the lot—leaving the remainder to the owner; that the Collector had not offered to sell so much of the land as would bring the amount of the tax but, instead, had sold the entire lot, 40 by 140 feet in size, and of the full value of $500 for $166, and that the excess, $149.81, had been covered into the treasury. By reason of these facts he claims that the sale was void and that the statute in authorizing such a sale operated to take his property without due process of law. The bill to quiet title was dismissed, and that judgment having been affirmed, the case is here on writ of error.

The plaintiff relies upon *Slater* v. *Maxwell*, 6 Wall. 268, and other like cases, in which sales under an excessive levy were held to be void. But those decisions are not applicable here, not only because an issue as to the invalidity of a levy merely because excessive, does not raise a Federal question, but because the statute here by giving a five-year period of redemption was intended in part to afford the tax payer an opportunity to protect himself against the sale of valuable property for an insignificant sum. The statute in providing that the State should buy in the property and holding it subject to redemption for five years, intended to furnish relief to those who, for want of ability to pay, or for want of notice of the levy, might otherwise be deprived of their property by an ordinary tax sale. Whatever the character of the title which the State acquired at the first sale,—whether legal or equitable,—it was in any event defeasible by redemption within five years.

The plaintiff in error insists, however, that at the second sale property worth $500 was sold for $166 all of which went to the State. He says that this was forfeiture pure and simple, and that there can be no valid forfeiture without a judicial determination as to the existence of the facts

warranting so heavy a penalty.  2 Cooley on Taxation (3d ed.), 858.

The plaintiff's contention must be limited to a consideration of the attack on the proceedings in which his lot was sold in 1905.  And, without undertaking to consider the essentials of a valid forfeiture of property for non-payment of taxes, it is sufficient to say that, in the present case, the statute gave an opportunity to be heard as to the fairness of the original assessment.  It gave notice of the time and place at which the property would be sold to the State subject to the owner's right to redeem during a period of five years.  Under the California decisions the first sale, at the end of five years, vested the State with the title. *King* v. *Mullen*, 171 U. S. 417, 436.  See also 2d Cooley on Taxation, 3d ed., 862.  The present case is even stronger, for this is a bill attacking the title of the purchaser who bought at the second sale, after notice had been given to the owner, by publication and mail of the time and place when it would occur—his right to redeem continuing up to the time the State actually entered or sold. *Santa Barbara* v. *Savings Society*, 137 California, 463.  Certainly such a sale, after the finding by the Controller of the amount of taxes due and after public and special notice to the owner would "work the investment of the title through the public act of the Government.  . . .  The sale was the public act which is equivalent to office found." *King* v. *Mullin*, 171 U. S. 417, 436.  That case shows that the defendant was not deprived of his property without due process of law in violation of the Fourteenth Amendment.  All other questions raised by the record are concluded by the decision of the state court.  The judgment of the Supreme Court of California is

*Affirmed.*