STATE *ex rel.* F. T. HURNER v. MYRTLE M. CULBREATH, Individually, and as Clerk of the Circuit Court of Hillsborough County, FRED P. CONE, Governor of the State, J. M. LEE, State Comptroller, W. V. KNOTT, State Treasurer, NATHAN MAYO, Commissioner of Agriculture, and GEORGE COUPER GIBBS, Attorney General, as Trustees of the Internal Improvement Fund of the State.

192 So. 814
Opinion Filed October 6, 1939
Rehearing Denied January 16, 1940

*John W. Cone, H. C. Tillman* and *John Twomey, Ralph A. Marsicano,* for Relator;

*George Couper Gibbs,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, for Respondents;

*William E. Thompson,* and *W. H. Poe,* as *Amici Curiae.*

TERRELL, C. J.—The Legislature of 1937 enacted Chapter 18296 providing for the sale of certain tax certificates held by the State and for the vestiture of title to all lands against which there remains outstanding tax certificates which are

more than two years old in the State of Florida. Section 9 of said Act is as follows:

"This Act shall remain in full force and effect for two years from the date same shall become a law and at expiration of such four-year period, then the fee simple title to all lands, against which there remains outstanding tax certificates which on the date this Act becomes a law, are more than two years old, shall become absolutely vested in the State of Florida, and every right, title or interest of every nature or kind whatsoever of former owner of said property or anyone claiming by, through, or under him, or anyone holding lien thereon shall cease, terminate and be at an end, and the State of Florida thereafter, through the Trustees of Internal Improvement Fund shall be authorized and empowered to sell the said lands to the highest and best bidder for cash at such time and after giving such notice and according to such rules and regulations by the said Trustees of the Internal Improvement Fund.

"After the expiration of two years from date this Act shall become a law no court in this State, either Federal or State shall have jurisdiction to entertain any suit brought by the former owner of said land or anyone claiming by, through, or under him for the purpose of questioning or in any way litigating or contesting the title of the State of Florida, or its grantee to said land."

The relator contending Section 9 to be invalid, brought this proceeding to redeem lands held by him in Hillsborough County which had become vested in the State under the terms of said Act. The amended alternative writ commands the respondent, Myrtle M. Culbreath, as clerk of the circuit court, to forthwith accept from relator a sum named and to cancel the tax certificates held by the State of Florida, described therein and to issue relator a receipt in full for all

subsequent and omitted taxes on his lands described in said certificates.

As to respondents, Trustees of the Internal Improvement Fund, the amended alternative writ commands them to forthwith assemble and rescind any and all instructions issued by them to the clerks of the circuit court with reference to the ownership, sale, or disposition of any and all lands vested in the State under the terms of said Act.

Different phases of Chapter 18269, Acts of 1937, have been before this Court and were adjudicated in the following cases: Messer v. Lang, Clerk, 129 Fla. 546, 176 So. 548; State *ex rel.* Stephens Timber Co. v. Lang, Clerk, 151 Fla. 216, 179 So. 401; State *ex rel.* Hughes v. Carruthers, Clerk, 131 Fla. 840, 180 So. 27; Rogers v. Bandy, *et al.,* 132 Fla. 790, 182 So. 281; Leatherman, Clerk, Circuit Court, v. State *ex rel.* Somerset Co., 133 Fla. 630, 182 So. 831; State *ex rel.* Northern Investment Corp. v. Lee, 136 Fla. 561, 187 So. 368. The constitutional validity of Section 9 was not raised or considered in any of these cases.

It is first contended that Section 9 is violative of the due process clause of the State and Federal Constitutions (the Fourteenth Amendment to the Federal Constitution and Section 12, Declaration of Rights, Constitution of Florida), in that it provides for a forfeiture of Relator's lands for failure to pay taxes for a period of four years or more and makes no provision for notice and an opportunity to protect against the invalidity of the assessment.

If it is true that a forfeiture actually took place after failure to pay taxes for four years without opportunity to redeem, there might be substance to this contention but an examination of the Act in connection with related Acts does not bear out this contention. In the first place, Chapter 18296 is limited in its operation to the sale at public auction

to the highest bidder for cash of all tax sale certificates held by the State that are more than two years old, including subsequent omitted or levied taxes. It does not attempt the sale of any tax certificates except those in which the period of redemption has passed and title to the lands has vested in the State for non-payment of taxes. Section 1027 (796) C. G. L.

Clothed in more concise and direct lingo, relator says that Chapter 18296 converts a mere lien into a forfeiture and vests in the State an indefeasible title without notice or opportunity on the part of the owner to protect the illegality of the assessment or to redeem the property from the sale.

This notwithstanding the fact that it is admitted that the taxes on the lands covered by the certificates had been regularly assessed, that relator was on knowledge of the assessment, that he deliberately passed up his opportunity to appear before the county commissioners as a board of equalization and protest the illegality of the assessment. But that is not all. He later saw his lands advertised for sale, saw them sold, and certificated to the State for non-payment of taxes; he let the two-year redemption period expire and while at any of these stages, he could have gone into court and protected his rights, he neglected to do so. In other words, when Chapter 18296 was enacted, all the provisions of Section 929, *et seq.,* Compiled General Laws of 1927, for the assessment, equalization, advertisement, sale, and redemption of lands for the non-payment of taxes had been complied with. In the face of such a showing, he will not now be permitted to say that he did not have notice and an opportunity to be heard in opposition to the sale of his lands or to question the validity of his taxes. Section 9, Chapter 18296, terminates the privilege to redeem title vested in State by Section 1027, Compiled General Laws.

The body and preamble to Chapter 18296 disclose that as a result of the boom of 1925 and the depression which followed, the delinquent tax situation had gotten in bad condition. The State had acquired approximately one hundred million dollars worth of tax liens for the non-payment of taxes, the result being that not only had this amount of property gone off the tax books but the burden on those that were still paying their taxes had become oppressive and unbearable.

The very purpose of Chapter 18296 was to relieve this situation. It dealt only with lands certificated to the State under Section 929, *et seq.,* Compiled General Laws of 1927, and in effect said to the former owners if at any time within two years from the passage of this Act, you will pay the cost of the sale of said certificates, you may have the privilege of redeeming your lands with all subsequent taxes remitted but that if you fail in this, the title of the State will become absolutely vested and sale thereof will be made by the Trustees of the Internal Improvement Fund to the highest and best bidder for cash.

It will thus be seen that the real purpose of Chapter 18296 was not to divest in the first instance but to give former owners a chance to redeem lands they had previously forfeited after every indulgence and constitutional right to save them had been extended but ignored. If the State cannot provide for a forfeiture of title under such circumstances, then it would be difficult to conceive a case in which it could. King v. Mullins, 171 U. S. 404, 18 Sup. Ct. 925, 43 L. Ed. 214; Chapman v. Zobelein, 237 U. S. 135, 35 Sup. Ct. 518, 59 L. Ed. 874.

But relator contends that Section 9 should be construed as *in pari materia* with Sections 929, 983, 992, 1000, 1002 and 1003, Compiled General Laws of 1927, and that when so

construed, the lands brought in question would be subject to redemption any time before tax deed was issued or if not then, under the very terms of said section, any time within four years from the effective date of the Act.

It is quite true lands sold and certificated to the State under Section 929, *et seq.,* Compiled General Laws of 1927, could be redeemed any time before tax deed was issued but as we have repeatedly said, this was a mere gratuity extended the tax payer by the State which it could withdraw at any time. In the case at bar, relator enjoyed that gratuity up to the passage of Chapter 18296 and under that Act for a period of two years, he was given a more liberal indulgence which he did not see fit to avail himself of though his taxes had not been paid for ten years.

There is no basis whatever for the four-year privilege to redeem except as contained in the words, "at expiration of such four-year period," found in the third and fourth lines of Section 9 of the Act as quoted. In one of the briefs, it is contended that the use of the term, "four-year period," as shown by the journals indicates a clear intent on the part of the Legislature to extend the period of redemption for four years. It may be admitted that such an intention was present but the facts are that the body of the Act shows conclusively that it was to remain in force and effect for two years only. Two-year periods are referred to at least ten times in the body of the Act. Some of these have no reference to redemption but some of them become ambiguous if the period of redemption is extended to four years. A court should not rewrite the whole import of an Act under such a showing.

Some of the briefs contend that the four-year period was intended to embrace the two-year life of the Act with the previous two-year life of the certificates to bring them under

the terms of the Act. This is not an unreasonable interpretation and on the face of the Act, it is more plausible than to say there was an intent to extend the period of redemption four years. The very purpose, tenor, and circumstances that precipitated the Act condemn the latter view. It appears that the public generally, including the Bar and the Legislature, construed the period of redemption to expire in two years. To uphold any other view, this Court must in effect revise and enlarge the life and import of the Act, which we are not authorized to do.

The case of State *ex rel.* Dowling v. Butts, 111 Fla. 631, 149 So. 746, is a complete answer to the contention that Section 9 is violative of Section 1 of Article IX, Constitution of Florida, in that it destroys uniformity of taxation. The gist of the holding in the latter case being that after expiration of the redemption period tax certificates held by the State become of speculative value and the Legislature may take such steps as it may deem proper to dispose of them without violating the rights of any tax payer. Uniformity of taxation goes to the act of the assessing body when the tax is imposed. It has no application to delinquent certificates that have reverted to the State for non-payment of taxes.

Is Chapter 18296 unconstitutional for the reason that the forfeiture to the State thereunder for non-payment of taxes destroys the lien of the county, municipality, drainage or other taxing districts previously acquired for the non-payment of their taxes?

This question must be answered in the negative. The power of taxation is a part of the sovereign power of the State. It inheres in the county, municipality, drainage, and other taxing district only to the extent conferred by the State. It is quite true that instances may be pointed out in

which State, county, municipal, and other district taxes have been made of equal dignity by legislative fiat but this is true only so long as the taxes are payable. When the lands revert to the State for non-payment of taxes, the lien of the State becomes paramount, and may be satisfied to the exclusion of all other liens.

Tax liens are creatures of statute and have no constitutional recognition as such. City of Sanford v. Dial, 104 Fla. 624, 142 So. 233. A tax does not become a lien unless made so by statute and the intent to create it must be clearly shown. The extent to which it is created is determined by statute but regardless of the entities that may be vested with it when it reaches a state of doubtful or speculative value, the claim of the State is at all times superior. When the property is sold to satisfy the lien of the State, the lien of minor political entities is divested in like manner that the claims of junior mortgages are extinguished at a foreclosure sale and the purchaser takes the title to the owner as well as the lien of the State. City of Paducah v. Green, 12 Ky. Ops. 701.

In taking this view, we do not overlook the contention of relator with reference to the burden it imposes on the one who has paid his taxes regularly as well as on the county, municipality, drainage, or other taxing district that has issued and has outstanding bonds and other obligations on the strength of the anticipated taxes.

If the certificates were live assets, there would be much to this contention but since they all represent lands that have reverted to the State for non-payment of taxes and many of them like those of relator have borne no taxes for ten years or longer, they are a highly speculative asset and many of them have no value whatever. Any burden that may have been imposed on the consistent taxpayer was not by

reason of failure to pay on the lands brought in question, for, except in rare instances, they have not and may never be expected to lighten the burden materially.

In the main, the Legislature was attempting to salvage the flotsam and jetsam from the 1925 suckers' interlude, erstwhile called the boom. The pots of gold metamorphosed from town lots and cut-over lands by the optimism and psychosis of that era changed suddenly to a medley of pyramided mortgages and delinquent tax certificates. The assumed values in the land were fictitious and existed only in the mind of the claimant. The whole scheme was so fantastic that it made John Law and his Mississippi Bubble look tame and innocent and the evidence we have of that indiscretion at the present is a "white elephant" on the tax structure of the State. Chapter 18296 was devised as a means to auction off these certificates and restore the lands to regular currents at proper value. We find no reason for the Court to intercept the experiment.

Other questions charging that the Act in question is vague and indefinite, delegates power to the Trustees of the Internal Improvement Fund in violation of Article III of the Constitution, and that it seeks to amend Acts pertaining to the Internal Improvement Fund without reinacting and publishing in full the Act attempted to be amended in violation of Section 16, Article III of the Constitution, have been considered but found to be without merit.

This being our view, it follows that the motion to quash the alternative writ must be and is hereby granted.

It is so ordered.

WHITFIELD, P. J., and BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.