[Civ. No. 29489. First Dist., Div: Two: Aug. 31, 1972.]

JAMES W. McMASTER et al., Plaintiffs and Appellants, v.
CITY OF SANTA ROSA et al., Defendants and Respondents.

COUNSEL

Anderson, McDonald & Belden and L. M. Belden for Plaintiffs and Appellants.

Charles M. Giovanetti for Defendants and Respondents.

OPINION

KANE, J.—Plaintiffs James W. McMaster and Alice M. McMaster appeal from a judgment of dismissal entered after general demurrers of City of Santa Rosa (City) and Francis Realty, Inc. (respondent) to the second amended complaint were sustained and plaintiffs failed to further amend.

The crucial and ultimate issue presented in this appeal involves the concept of procedural due process in the context of the sale of tax delinquent property.

Since appellants failed to pay their property taxes for the 1962-1963 fiscal year, the City, on July 5, 1968, conducted a tax sale wherein the property of appellants was sold to respondent Francis Realty, Inc. Subsequent to the sale the property was conveyed to respondent by a deed executed by the tax collector of the City.

Although it is clear from their second amended complaint that appellants' property was listed on the 1967-1968 published notice of sale, they allege that both the July 5, 1968 sale and the subsequent deed to respondent are invalid because the City violated seven provisions of the City of Santa Rosa Code ("Ordinance") which regulates the procedure with respect to delinquent taxes and tax sale of property.

Observing the rule that a general demurrer admits the truth of all the material factual allegations in the complaint (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216]), the violations charged in appellants' complaint must be taken as true.

The ultimate legal question, therefore, is whether the alleged defects or irregularities are of such nature as to deprive the City of jurisdiction to consummate a valid tax sale of appellants' property.

Resolution of this issue, in turn, involves a determination of the effect

of the state curative statute[1] and/or the built-in curative provision of the City's Ordinance itself.[2]

Appellants argue: (1) that the state curative statute is inapplicable to the present case; (2) that the built-in curative provision of the Ordinance —at best—creates only prima facie evidence of the regularity of the proceedings; and (3) that the curative provisions cannot cure the charged violations because they are jurisdictional.

Appellants' first argument is obviously mistaken. Section 1 of the curative state statute validating certain acts of taxing agencies and revenue districts explicitly provides that "'taxing agency' includes the state, county and *city*." (Italics added.) At the same time section 53 of the Charter of the City provides that all general laws of the state applicable to municipal corporations are applicable to the City unless they are in conflict with the charter, ordinances or resolutions of the City. Appellants fail to allege or show any such conflict. ■ As far as the curative provision of the Ordinance is concerned, we note that although section 8.180 is couched in evidentiary terms, it has the same effect as a curative statute (*Hall* v. *Chamberlain* (1948) 31 Cal.2d 673, 678 [192 P.2d 759]; cf. *Ramish* v. *Hartwell* (1899) 126 Cal. 443 [58 P. 920]; 47 Cal.Jur.2d, § 340, pp. 89-90).

Appellants' third contention, in essence, is that the irregularities in the tax sale procedure were violative of the adequate notice requirement, inherent in due process of law; consequently, appellants claim they were jurisdictional violations which could not be remedied by curative legislation. We disagree.

■ It is, of course, elementary that, although it is a matter of common

[1]The curative state statute (Stats. 1968, Reg. Sess., ch. 480) provides, inter alia, as follows:

"Section 1. As used in this act 'taxing agency' includes the state, county, and city . . . .

"Sec. 3. Every act and proceeding heretofore taken by any taxing agency . . . or the officers thereof relative . . . to tax sales or certificates of tax sales, tax deeds or other conveyances, are hereby confirmed, validated and declared legally effective.

"Sec. 4. (a) This act is limited to the correction of defects, irregularities and ministerial errors which the Legislature originally could have omitted from the statutory requirements of law under which the acts hereby confirmed, validated and declared legally effective were taken.

"(b) This act is limited to the validation of acts and proceedings to the extent to which the same can be effectuated under the State and Federal Constitutions."

[2]Section 8.180 reads as follows: "The deed, duly acknowledged or proved, is conclusive evidence, except against actual fraud, of the regularity of all other proceedings, from the assessment of the assessor to the execution of the deed, both inclusive. (Ord. 554, Sec. 1000)"

knowledge that failure to pay property taxes can result in penalties, including loss of the property, the property may not be taken from its owner without due process of law. The fundamental requisite of due process is *notice,* reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action and to afford them opportunity to be heard (*Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 314 [94 L.Ed. 865, 873, 70 S.Ct. 652]; *Milliken* v. *Meyer* (1940) 311 U.S. 457, 463 [85 L.Ed. 278, 283, 61 S.Ct. 339, 132 A.L.R. 1357]). While there is no constitutional mandate which makes specific how that notice is to be given or which form it must take, the questions of notice and due process are so inextricably part and parcel of each other that there can be no due process without the sovereign following some procedure which, according to common experience, should reasonably give notice of impending interference with ownership or right of possession. (*Litchfield* v. *County of Marin* (1955) 130 Cal.App.2d 806, 813 [280 P.2d 117].)

■ The cases make it explicit that the notice required by statute in tax sale proceedings is designed to afford the property owner protection and enable him to pay taxes *before the title passes from him* (*Sawyer* v. *Berkeley Securities Co.* (1929) 99 Cal.App. 545, 548 [279 P. 217]). Based upon this premise, it has been held that, *where* the taxing power has acquired private property by due process of law and *the title has passed to the state, the state may,* without violating any rights or due process, *sell the property without giving notice to the individual owner* at all, or may give such notice as, in its discretion, seems proper (*Fox* v. *Wright* (1907) 152 Cal. 59 [91 P. 1005]; 47 Cal.Jur.2d, § 321, pp. 65-66).

In the instant case, as we have pointed out, appellants were delinquent in their taxes for the 1962-1963 fiscal year. When this occurred certain provisions of the City's Ordinance came into play.[3] Thus, section 8.153 of the Ordinance provides for the publication of the delinquent list on or before June 8 each year. Section 8.154 provides that "With the delinquent list the tax collector shall publish a notice specifying: (a) that unless the taxes, penalties and costs are paid the real property on which they are a lien will be sold; (b) the time and place at which the property will be sold to the city by operation of law. (Ord. 554, Sec. 902)."

Section 8.162 provides that "Not less than twenty-one nor more than twenty-eight days after the first publication of the delinquent list, at the

---

[3]Although these precise sections were not referred to by the parties in their briefs, we take judicial notice of them. (Evid. Code, § 452, subd. (b).)

time fixed in the publication, the real property on which all taxes, penalties and costs have not been paid, except tax sold property and possessory interests, shall by operation of law and the declaration of the tax collector be sold to the city. The sale shall be in the tax collector's office. (Ord. 554, Sec. 936)"

As a result, therefore, it must be concluded: (1) that prior to June 8, 1963 the City tax collector published a delinquent list which included appellants' property and a notice that unless the taxes, penalties and costs were paid the real property on which they were a lien would be sold, and the time and place at which the property would be sold to the City by operation of law; and (2) that not later than 28 days after the first publication of the delinquent list appellants' property was sold by operation of law in the tax collector's office to the City.

Since appellants do not allege any failure on the part of the City to comply with any of these sections, it must be conclusively presumed that the City did, in fact, perform the duties thereby imposed and that appellants received the only notice to which they were entitled by law.

Notwithstanding receipt of this notice, appellants now point to claimed "jurisdictional" irregularities occurring thereafter which they contend vitiate the sale to respondent.

The cases have not established a clear-cut definition of what does or does not constitute a "jurisdictional defect." Perhaps the most definitive expression is that contained in *Miller* v. *McKenna* (1944) 23 Cal.2d 774, 782 [147 P.2d 531]: "Among the jurisdictional requisites are (a) a duly constituted taxing authority; (b) property to be taxed within the territorial jurisdiction of the taxing body; (c) property or subject matter legally subject to the tax; and (d) sufficient notice and opportunity for hearing to constitute compliance with due process. [Citations.] *While the Legislature cannot cure the omission of jurisdictional requisites, the manner of procedure, after jurisdiction is acquired and the mandates of due process are complied with, are matters within the legislative discretion and may be subjected to the exercise of the healing power so long as further constitutional inhibitions are observed.*" (Italics added.)

The test seems to be that if a particular requisite of the ordinance could have been omitted by the legislative body in the first place, then a failure to comply with it is not jurisdictional (*Gray* v. *Jones* (1950) 99 Cal.App.2d 654 [222 P.2d 319]).

We, therefore, turn to the alleged violations and test them in the light of these established principles.

## A. *Tax Roll and Tax Bill Defects.*

■ Appellants allege that the assessor failed (1) to enter on the tax roll the fact that the property had been sold and the date of sale, and (2) failed to indicate on the tax bills subsequent to 1963-1964 that appellants' property had been sold and the date of sale.

These precise claims were raised and rejected by the court in *Bank of Lemoore* v. *Fulgham* (1907) 151 Cal. 234, 239 [90 P. 936], holding that such defects were cured by a statute making the tax deed conclusive evidence of the regularity of the tax sale proceedings.

## B. *Notice of Sale Defects.*

### 1. *Contents of the Notice.*

■ Appellants set forth four separate defects as to the contents of the published notice of sale in 1968. Thus, they assert: (1) failure to specify the place of sale; (2) failure to state *when* appellants' property was to be sold; (3) failure to set forth the minimum amount of acceptable bid; and (4) the absence of a date on the notice of sale.

None of these defects is of jurisdictional stature for it has long been established that the form and content of tax delinquency notices are "details which are subject to legislative or administrative discretion, and defects therein are related to the mode of the exercise of the power, which being merely directory, may be made effective by a curative act. [Citation.]" (*City of Compton* v. *Boland* (1945) 26 Cal.2d 310, 316 [158 P.2d 397].)

### 2. *Failure to Mail Notice.*

■ In addition to the required publication of notice of sale, the City Ordinance provides in section 8.160 that "Within five days after publication of the notice of sale of tax sold property and at least twenty-one days before the date of sale, when tax sold property is to be sold at public auction, the tax collector shall mail to the last assessee either a copy of the publication or a notice of sale."

It is alleged that the City failed to mail such notice to appellants. It is this omission to which appellants address their major due process argument. Although this precise defect was once determined by the Court of Appeal to be nonjurisdictional, that decision was supplanted by the opinion of the Supreme Court, after it had granted a hearing (*Tannhauser* v. *Adams* (1947) 31 Cal.2d 169 [187 P.2d 716, 5 A.L.R.2d 1015]). The Supreme Court reached the same end result as the Court of Appeal, but on an

entirely different basis which eliminated the need for the high court to consider the issue of the jurisdictional or nonjurisdictional nature of the defect.

We share the same view, however, as expressed by the trial judge in his scholarly memorandum opinion that the reasoning of the Court of Appeal in *Tannhauser* was sound and remains sound; namely, that publication of notice is all of the "due process" notice to which the delinquent taxpayer is entitled, and that "As far as the mailing of additional notices of sale prior to the sales to and from the State, or the mailing of any additional notices at all is concerned, such notices could have been done away with or not required by the legislature in the first instance without doing violence to due process." (182 P.2d 280, 283.)

Having satisfied ourselves that appellants were not deprived of due process, we call to mind and repeat the very salutary public policy which is the genesis of validating or curative legislation: "The purpose of the validating statute is to rehabilitate tax-deeded property and procure its return to the tax rolls. The accomplishment of the purpose is conducive to equality in assessments for the support of government and therefore to stability in government. It is a matter of public importance, therefore, that the validating act be applied to effectuate the legislative purpose so long as constitutional mandates are observed." (*City of Compton* v. *Boland, supra,* 26 Cal.2d at p. 316.)

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.