[Civ. No. 1974. Fifth Dist. Apr. 11, 1975.]

GLENN I. JOHNSON et al., Plaintiffs and Appellants, v.
ALMA INVESTMENT COMPANY, Defendant and Respondent.

**COUNSEL**

Vizzard, Baker, Sullivan, McFarland & Long and Allen H. McFarland for Plaintiffs and Appellants.

Donald G. Kendall for Defendant and Respondent.

OPINION

FRANSON, J.—Appellants sued to quiet title to real property alleging a failure of the taxing authorities to give adequate notice of a special water district assessment on the property which resulted in a sale of the property to respondent for delinquent taxes. The trial court found that adequate notice of the special assessment had been given to appellants, and it entered a judgment in favor of respondent as the owner of the real property.

FACTS

In the early 1960's, appellants, who have lived at the same address in Palo Alto, California, since 1951, purchased two 20-acre parcels of property within the Semitropic Water Storage District in Kern County. The first parcel, not in question in this action, was purchased in 1961. The second parcel, designated in the water district's tax roll as Smyrna Colony Lot 57, was purchased in 1962 for about $6,000.

The tax records of three Kern County governmental agencies are relevant to the resolution of this case: the tax assessor, the tax collector and the Semitropic Water Storage District.

The 1963 county tax statement received by appellants from the tax collector for the property not at issue had appellants' name and "address unknown" typed on it, but written to the right in pencil was the correct Palo Alto address. The 1964 tax statement had the correct address typed in.

The 1963 and 1964 tax statements for Lot 57, the property in question, also stated "address unknown" but the correct Palo Alto address was penciled in on both statements received by appellants. In 1965, and in ensuing years, the correct address was typed on the statements.

The tax collector's copy of the final assessment rolls showed that in 1963 and 1964 Lot 57 was assessed to appellant and "address unknown" was typed in; in 1963 and 1964, however, employees of the tax collector's office had penciled in the correct Palo Alto address on its copy of the assessment rolls. In 1965 and ensuing years, the correct address was typed on the collector's copy of the assessment roll listing Lot 57.

The original assessment roll in the assessor's office listed Lot 57 as assessed to appellant Glenn Johnson at "address unknown" with no

address correction in 1963 and 1964. The 1965 assessment roll had the correct address typed in.

A deputy tax collector testified that the fact that a tax collector employee had penciled in the correct address on the 1963 and 1964 copies of the assessment rolls indicated that the tax collector had received correspondence from the assessee (appellants), and that the notation "per letter" on the 1964 copy of the assessment roll indicated that the assessee had specifically requested that the correct address be inserted permanently.

The assistant tax assessor testified that it could take one or two years for the correct address to get from the tax collector's office to the assessor's rolls.

On October 14, 1964, the water district levied a special assessment of 50 cents per acre on the 2,000 parcels within the district. It was the first assessment levied by the district since 1958. In order to make up the district's assessment roll as required by law (Wat. Code, §§ 46200, 46209), the district had to record the name and address of the owner of each tract of land within the district, if known, and if unknown, that fact. (Wat. Code, § 46200, subd. (c).) To obtain this information, the district hired part-time help; these employees used the parcel numbers to ascertain the name and address of the owner of each parcel from the assessor's tax roll. This was done sometime in the summer of 1964. The district's assessment roll then was transmitted to the county treasurer (Wat. Code, § 46205) along with a notice of the assessment for mailing or for publication as required by law. (Wat. Code, §§ 46695 and 46696.)

Crystal Harris, a former assistant secretary to the board of directors of the water district testified that on October 6, 1965, a form letter was sent to the delinquent taxpayers to remind them of the assessment but it must not have been sent to appellants because the water district still didn't have an address on Lot 57. Mrs. Harris said it was possible that they rechecked the assessor's rolls at that time but she wasn't sure; they could have made a mistake. She said that in her new job with another water district she learned that other sources of information on taxpayers were available so she now checks with the tax collector as well as the assessor to get the names and addresses. She couldn't remember why she hadn't checked with the tax collector in 1964-1965, but she said it seemed to her like a "lack of activity" on the water district's part not to have done so.

As a consequence of drawing its information from the assessor's rolls, the district's assessment roll listed the correct Palo Alto address for appellants' property not in dispute, but for Lot 57, the appellants' address was listed as "address unknown."

Appellants received through the mail a notice of the $10 assessment on the uncontested parcel which they paid on October 21, 1964, one week after the assessment was made. No notice of the $10 assessment on Lot 57 was mailed to appellants; however, notice of the assessment was published in the Kern County newspapers as authorized by Water Code section 46696.[1]

The assessment on Lot 57 became delinquent; notice of the delinquency and the date of the proposed tax sale was published in the Kern County newspapers on January 28, 1966, and February 4, 1966, as required by law. (Wat. Code, §§ 46730, 46731.) On February 17, 1966, a tax sale was held and respondent purchased Lot 57 for $185.

The tax collector continued to bill appellants for county taxes on Lot 57 through 1969. Appellants paid the taxes. In 1970, when appellants did not receive a county tax statement on Lot 57, they wrote the assessor's office; the assessor wrote back informing appellants of the transfer of title to respondent.[2] This was the first the appellants knew of the assessment or the delinquency and sale.

## DISCUSSION

██ We hold that appellants were deprived of their property without due process of law because they did not receive adequate notice of the special assessment notwithstanding publication of the notice of assessment as authorized by Water Code section 46696.

██ ▪ The fundamental requisite of due process is *notice reasonably calculated under the circumstances* to apprise the interested parties of the proceedings. (*Mullane* v. *Central Hanover Tr. Co.*, 339 U.S. 306, 314 [94

---

[1]Water Code section 46696 provides: "The notice shall be sent through the mail, addressed to each holder of title to land at his place of residence if known, and if not known, at the place where the principal office of the district is situated. In lieu of mailing, the notice shall be published once a week for two consecutive weeks in each affected county."

[2]In 1969, when the three-year period of redemption provided by Water Code section 46785 had expired, the county treasurer executed a deed to the property in favor of respondent as required by law. (Wat. Code, § 46788.)

L.Ed. 865, 873, 70 S.Ct. 652, 657].) In *Mullane,* the court addressed the sufficiency of published notice to beneficiaries on a judicial settlement of accounts of a common trust fund. The court held that where the addresses were known, published notice was insufficient because, under the circumstances, it was not reasonably calculated to reach those that could easily be informed by other available means; as to them, notice by mail was required. "More specifically, *Mullane* [holds] that notice by publication is not sufficient with respect to an individual whose name and address are known *or easily ascertainable.*" (Italics added. *Robinson v. Hanrahan,* 409 U.S. 38, 40 [34 L.Ed.2d 47, 49, 93 S.Ct. 30, 31].)

*Mullane* has been followed in a number of cases. In *Covey* v. *Town of Somers,* 351 U.S. 141 [100 L.Ed. 1021, 76 S.Ct. 724], the respondent municipality instituted proceedings to foreclose a tax lien against a parcel owned by appellant. Notice was given to the taxpayer by mail *and* by publication. No answer was filed and the property was sold for taxes. The taxpayer was an incompetent without an appointed guardian who lived alone. Because the town knew this but made no attempt to have a legal representative appointed prior to the tax foreclosure, the notice was inadequate and the taking of the property was without due process.

In *Walker* v. *Hutchinson City,* 352 U.S. 112 [1 L.Ed.2d 178, 77 S.Ct. 200], it was held that where the landowner was a resident of the state and his name was known to the city and was on the official records, newspaper publication alone of notice of condemnation proceedings against his property did not comport with due process.

In *Schroeder* v. *City of New York,* 371 U.S. 208 [9 L.Ed.2d 255, 83 S.Ct. 279, 89 A.L.R.2d 1398], the city instituted condemnation proceedings in connection with the planned diversion of a river upstream from appellant's land. Although the landowner's name and address were readily ascertainable from both deed records and tax rolls, no notice was mailed. Instead, notice was published in 4 newspapers and was posted on 22 trees and poles along a stretch of the river in the general vicinity of appellant's vacant land. This notice was held to be insufficient.[3]

---

[3]In *Paschall* v. *Christie-Stewart, Inc.,* 414 U.S. 100 [38 L.Ed.2d 298, 94 S.Ct. 313], the Supreme Court noted probable jurisdiction in an Oklahoma case involving the published notice provision of an ad valorem property tax statute. The state court had upheld its validity on the rationale that the timing of the ad valorem tax was a common and well-known fact that was set by statute. The Supreme Court heard arguments, but remanded for consideration of a statute of limitations issue that was possibly dispositive. (*Christie-Stewart, Inc.* v. *Paschall* (Okla. 1972) 502 P.2d 1265.)

For a similar California case upholding the validity of notice by publication statutes with regard to an annually assessed ad valorem property tax, see *Westinghouse Elec.*

In *Bennett* v. *Hibernia Bank*, 47 Cal.2d 540, 556 [305 P.2d 20], it was held that the provisions of the California Bank Act (§ 29(a)) authorizing certain banks without corporate stock to bring an action to determine persons entitled to membership therein or to any right or interest in its property or assets and providing that all persons appearing on the records of the corporation as members and all other persons who are known by it to claim to be members shall be included as defendants, when properly construed, requires personal service not only upon resident members whose names actually appear on the corporate records, but also upon persons residing in California who are successors of such members provided the corporation is aware *or could by the exercise of reasonable diligence discover that they are successors.* (47 Cal.2d at pp. 555-556.) To have construed the section otherwise would have deprived a successor-member, whose name had not been placed upon the corporate books but whose interest was known to the corporation, of his property without due process.

Similarly, in *Allen* v. *Flournoy*, 26 Cal.App.3d 774 [103 Cal.Rptr. 275], it was held that posted notice of a proceeding to determine inheritance tax did not satisfy due process requirements where the whereabouts of the estate beneficiaries upon whom the incidence of tax fell were known or could have been easily ascertained from the probate file. The court stated: "We think posted notice is clearly insufficient under *Mullane* v. *Central Hanover Tr. Co.* [citation], at least when the whereabouts of the person sought to be made a party are as readily ascertainable as they were here." (26 Cal.App.3d at pp. 780-781.) (See also *Scott* v. *City of Indian Wells*, 6 Cal.3d 541, 548-549 [99 Cal.Rptr. 745, 492 P.2d 1137]; cf. *McMaster* v. *City of Santa Rosa*, 27 Cal.App.3d 598 [103 Cal.Rptr. 749].)

██ In the present case, notice of the assessment on Lot 57 was not mailed to appellants because their address was not listed on the water district assessment roll that was filed with the tax collector-county treasurer. In 1964, when the district assessment roll was made up, appellants' address as owners of Lot 57 appeared on the tax collector's records and it had been there since 1963. When the notice of delinquency was mailed out by the district in 1965, their address as owners of Lot 57 appeared on the records of both the tax assessor and the tax

*Corp.* v. *County of Los Angeles*, 42 Cal.App.3d 32, 42-44 [116 Cal.Rptr. 742]. The court in that case distinguished the notice required for an annual tax from that required for some isolated instance of taxation. (42 Cal.App.3d at p. 44.) In the present case, the assessment levied by the Semitropic Water Storage District was not a regularly scheduled tax, but was levied in the discretion of the board of directors. (See Wat. Code, § 46000 et seq.; § 46375 et seq.; § 46500 et seq.)

collector. Similarly, when the notice of sale was published in January and February 1966, appellants' address was readily available to the district as it was on the tax assessor's and tax collector's records. Had the district checked the tax collector's records at any time during or after 1963, or the assessor's records during or after 1965, it would have discovered appellants' correct address as owners of Lot 57. Because the address was readily ascertainable, notice by publication was insufficient.

 To the extent that Water Code section 46696[4] literally purports to authorize publication of a notice of assessment in lieu of mailing even when the address of the holder of title is *known,* the section is constitutionally defective insofar as due process notice to the landowner is concerned. Only when the address is unknown and cannot be ascertained with reasonable diligence will a publication in lieu of mailing satisfy the constitutional requirements.

 Respondent argues that appellants were negligent in not making inquiry as to a possible assessment on Lot 57 when they received the mailed notice of the assessment on their other property within the district. However, appellants had notified the tax collector of their correct address in 1963 and 1964; they received regular correspondence from the district and it was apparent to them that the district knew their address. They testified that when the assessment on the uncontested property arrived, it did not occur to them that there may also have been an assessment on Lot 57. The assessment letter did not state that the assessment applied to all land within the water district. Appellants paid the one water district assessment promptly, and they paid county taxes on Lot 57 through 1969. When the 1970 tax bill for Lot 57 failed to arrive, appellants immediately contacted the county assessor, and upon learning of the tax sale, instituted suit. At trial, they tendered payment to respondent of the $185 paid at the tax sale, plus interest. Appellants have been as diligent in protecting their property rights as reasonably could be expected. (Cf. *Allen* v. *Flournoy, supra,* 26 Cal.App.3d 774, 781, where mailed notice to the taxpayer's husband who was executor of the estate was insufficient notice to the taxpayer.)

Moreover, because the failure to give due process notice of the assessment is a "jurisdictional defect" (see *McMaster* v. *City of Santa Rosa, supra,* 27 Cal.App.3d 598, 603; *Miller* v. *McKenna,* 23 Cal.2d 774, 782 [147 P.2d 531]), the sale of Lot 57 to respondent was a nullity. Under

---

[4]See footnote 1, *ante.*

the facts of this case, such a consequence may not be avoided by assertions of negligence on appellants' part.

The judgment is reversed; the action is remanded to the trial court for entry of a decree quieting title in appellants to the subject real property upon their paying to respondent the sum of $185 plus interest. (See Wat. Code, § 46786; see also Rev. & Tax. Code, § 3728; 5 Witkin, Summary of Cal. Law, Taxation, § 192, p. 4166.)

Gargano, Acting P. J., and Thompson, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.