[Civ. No. 2903. Fifth Dist. Nov. 23, 1976.]

ROBERT L. CHESNEY, Plaintiff and Appellant, v.
LYNN GRESHAM, as Tax Collector, etc., et al.,
Defendants and Respondents.

**COUNSEL**

Gilbert Moody and Vernon Johnson for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Charles C. Kobayashi, Deputy Attorney General, Russell M. Koch, County Counsel, and Blair H. Checketts, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**BROWN (G. A.), P. J.**—Plaintiff and appellant, Robert L. Chesney, filed this action against the State of California, the County of Merced, Lynn Gresham, as Tax Collector of the County of Merced, David R. Hudgins as Assessor of the County of Merced, and John Hovannisian to set aside a tax sale and deed to the State of California and a subsequent sale and deed of the property to Hovannisian, and in the alternative for damages. The trial court granted the motion for summary judgment (Code Civ. Proc., § 437c) of the defendants State Controller, State of California, County of Merced, Lynn Gresham as Tax Collector of the County of Merced, and David R. Hudgins as Assessor of the County of Merced.[1] Chesney has appealed from the summary judgment.

[1] Defendant John Hovannisian did not join in the motion for summary judgment and is not a party to this appeal.

■ There is little conflict in the facts. However, since this is an appeal from a summary judgment, where such conflict appears in the papers submitted in support of and in opposition to the motion, we resolve those conflicts in favor of the nonmoving party (appellant herein).

Appellant purchased and obtained title to Lot 170 of the Delhi State Land Development subdivision in Merced County in February 1966, that lot being the subject of this action. He has also owned Lot 168 in the same subdivision since 1965. Contemporaneously with the purchase of Lot 170, appellant purchased Lot 169 adjoining Lot 170 and put it in the name of Emma Robbins, whom appellant married in December 1974. He has lived on Lot 169 since September 1, 1973.

At the time of the purchase of Lot 170 the assessor's office records reflected appellant's address as 427 West Palmer, Glendale, California. In early 1968 appellant moved his business from 427 West Palmer Avenue and he has never received any of the tax bills or notices with regard to Lot 170 since that date.

As to Lot 168, he received tax bills and notices at his correct address, as did Emma Robbins with regard to Lot 169.

On October 9, 1970, appellant orally notified the assessor's office of his correct address for Lot 170. The assessor's office records did not reflect such notification or change of address, and since their records continued to reflect the 427 West Palmer Street address for Lot 170 they continued to mail the tax bills and other notices to that address.

The county ad valorem taxes for the fiscal year 1967-1968 on Lot 170 were not paid, and after proper publication of notice (Rev. & Tax. Code,[2] §§ 3351, 3436) Lot 170 was sold to the state. The taxes remained delinquent for five years after the sale, and in accordance with statutory provisions Lot 170 was deeded to the state on July 3, 1973. (§§ 3361, 3365, 3517, 3518.) On October 29, 1973, Lot 170 was sold by the state at public auction to defendant Hovannisian for $9,600 plus $11 costs and was subsequently deeded to him. At the time of the sale the delinquent taxes and penalty on the property were in the amount of $2,468.43.

---

[2]All references to code sections herein will be to the Revenue and Taxation Code unless otherwise indicated.

Prior to the deed to the state a notice of intended deed to the state was published pursuant to section 3361. The tax collector also sent a registered mail notice of the intent to deed to the state pursuant to section 3365.[3] When this notice was returned as undeliverable the tax collector checked through the records of the assessor's office for a better address but could find none.

Before the public auction resulting in the sale to respondent Hovannisian, in addition to the publication of notice thereof as required by section 3702,[4] the tax collector again sent registered mail notices of the sale of tax deeded property to occur at public auction on October 29, 1973. These notices were returned, and although the tax collector checked through the records of the assessor's office he could find no better address. Though not required by statute, on September 13, 1973, the tax collector also sent a notice of the intent to sell Lot 170 on October 29, 1973, to all adjoining lot owners. One of those was sent to Emma Robbins, who was listed as owner of Lot 169.

Appellant actually learned of the impending sale on Thursday, October 25, 1973, or Friday, October 26, 1973, when persons unknown to

[3]Section 3365 provides: "After the first publication of the notice of intent to deed to the state and not less than 21 nor more than 35 days before the date of deeding, when tax-sold property is to be deeded, the tax collector shall send by registered mail to the last assessee of the tax-sold property at his last known address either a copy of the publication or a notice of intent to deed the property to the state. The tax collector shall make a reasonable effort to ascertain the address of the last assessee of the tax-sold property, including, but not limited to, an examination of the assessment of this property on the rolls beginning with the year of delinquency to and including that of the last equalized roll, an examination of the most recent telephone books in the county in which the tax-sold property is located, and an examination of the telephone book covering the area of the last known address of the last assessee.

"The failure of the tax collector to make a reasonable effort to ascertain the address of the last assessee as required by this section shall not affect the validity of the deed to the state."

[4]Section 3702 provides: "The tax collector shall publish the notice of intended sale once a week for three successive weeks in a newspaper of general circulation published in the county seat and in a newspaper of general circulation published in the judicial district in which the property is situated. If the same newspaper of general circulation is published in both the county seat and in such district, or if the publication of the notice of sale is made in a newspaper which is determined pursuant to Section 3381 as most likely to afford adequate notice of the sale, publication in such paper shall satisfy the requirements for publication set forth in this section. If there is no newspaper published in the county seat or in the judicial district, then publication may be made by posting notice in three public places in the county seat or in the judicial district, as the case may be, where no such newspaper is published. The publication shall be started not less than 21 days prior to the sale."

him came to Lot 170 to inspect the property in contemplation of submitting a bid thereon.

■ Approximately two weeks following the sale appellant attempted to pay the obligation on Lot 170 in full to the tax collector, and it was properly refused. (§ 3707; *Mercury Herald Co.* v. *Moore* (1943) 22 Cal.2d 269, 273 [138 P.2d 673, 147 A.L.R. 1111].)

During his lifetime appellant had owned approximately 10 different parcels of real property in California, was aware of the annual tax assessments and knew that the taxes on Lot 170 had not been paid since he purchased the lot in 1966. This fact did not concern him because he believed the property could not be sold without actual notice to him.

Two other statutory provisions have particular relevance to the issues herein. With regard to the deed to the state, section 3518 provides: "The deed, duly acknowledged or proved, is conclusive evidence, except against actual fraud, of the regularity of all other proceedings from the assessment of the assessor to the execution of the deed, both inclusive."

Relative to the effect of the deed to the purchaser at the public auction, section 3711 provides: "Except as against actual fraud, the deed duly acknowledged or proved is conclusive evidence of the regularity of all proceedings from the assessment of the assessor to the execution of the deed, both inclusive."

The nuclei of appellant's contentions are that (1) the tax collector did not comply with the requirements of sections 3365 and 3701 because the registered mail notice was not sent to appellant's correct address which the assessor had been told about, (2) because appellant was the owner of an adjacent lot, No. 168, and the correct address appeared as to that lot, the tax collector must not have made a reasonable effort to ascertain his last address,[5] and (3) the validating provisions in the last paragraph of sections 3365 and 3701 and those contained in sections 3518 and 3711 are invalid as being a violation of due process inasmuch as they purport to authorize the sale of Lot 170 without actual notice to the owner, in violation of the owner's constitutional due process rights.

---

[5] In this connection it must be noted that these sections literally require the search of the assessor's records only with regard to "this property," not all property or lots on the rolls of the assessor, the latter obviously being a burden beyond the resources of the assessor.

We start with the last point first since if the requirement of notice by registered mail "could have been omitted by the legislative body in the first place, then a failure to comply with it is not jurisdictional . . . ." (*McMaster* v. *City of Santa Rosa* (1972) 27 Cal.App.3d 598, 603 [103 Cal.Rptr. 749].) ■ To elaborate, sections 3518, 3711, 3365 and 3701 cannot cure a jurisdictional defect, that is, one which is a constitutionally indispensable step. (*Miller* v. *McKenna* (1944) 23 Cal.2d 774, 782 [147 P.2d 531]; *Ramish* v. *Hartwell* (1899) 126 Cal. 443, 449 [58 P. 920]; *Philbrick* v. *Huff* (1976) 60 Cal.App.3d 633, 641 [131 Cal.Rptr. 733].) Alternatively, those sections do cure a nonjurisdictional defect. (*Philbrick* v. *Huff, supra,* 60 Cal.App.3d 633, 640; *Nutting* v. *Herman Timber Co.* (1963) 214 Cal.App.2d 650, 656 [29 Cal.Rptr. 754]; *Bell* v. *Towns* (1949) 95 Cal.App.2d 398, 400-401 [213 P.2d 73].) Thus, *Philbrick* v. *Huff, supra,* 60 Cal.App.3d 633, 640, citing *Nutting* v. *Herman Timber Co., supra,* 214 Cal.App.2d 650, 656, states: "A defect in a tax proceeding is not jurisdictional where it 'has been for nonobservance of some procedural notice or other step which the Legislature, without defiance of state or federal Constitution, might have dispensed with altogether.' " (See also *Paul* v. *Los Angeles County Flood Control Dist.* (1974) 37 Cal.App.3d 265, 273-275 [112 Cal.Rptr. 274].)

Thus, in determining whether or not failure of respondent to send tax bills and notices of delinquency to appellant's proper address is jurisdictional, it must be determined whether direct mail notice is necessary to satisfy appellant's rights to constitutional due process.

■ "It is, of course, a well-established principle that a person's property may not be taken from him without due process of law and that a fundamental requisite of due process is notice, reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of proceedings which could result in a deprivation of a person's property so as to afford him an opportunity to be heard. [Citations.]" (*Philbrick* v. *Huff, supra,* 60 Cal.App.3d 633, 641.) In the seminal case of *Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 315 [94 L.Ed. 865, 874, 70 S.Ct. 652, 657], the United States Supreme Court concluded: "The means employed [to give notice to interested parties] must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . . ."

In *Mullane,* the court held mere publication of notice to the beneficiaries of a trust fund whose names and addresses appeared on the trustee's books was insufficient to satisfy due process. As to those beneficiaries, the trustee was required to provide notice by mail. (*Mullane* v. *Central Hanover Tr. Co., supra,* 339 U.S. at p. 318 [94 L.Ed. at p. 875].)

The case makes clear, however, that actual notice need not be shown to satisfy the requirements of due process. It states: "The statutory notice to known beneficiaries is inadequate, not because in fact it fails to reach everyone, but because under the circumstances it is not reasonably calculated to reach those who could easily be informed by other means at hand." (*Mullane* v. *Central Hanover Tr. Co., supra,* 339 U.S. 306, 319 [94 L.Ed. 865, 876].)

■ A long line of California cases has held in tax sale situations "publication of notice is all of the 'due process' notice to which the delinquent taxpayer is entitled, and that '[a]s far as the mailing of additional notices of sale prior to the sales to and from the State, or the mailing of any additional notices at all is concerned, such notices could have been done away with or not required by the legislature in the first instance without doing violence to due process.' (182 P.2d 280, 283.)" (*McMaster* v. *City of Santa Rosa, supra,* 27 Cal.App.3d at p. 605; see also *Merchants' Trust Co.* v. *Wright* (1911) 161 Cal. 149, 150 [118 P. 517]; *Bank of Lemoore* v. *Fulgham* (1907) 151 Cal. 234, 239-240 [90 P. 936]; *Philbrick* v. *Huff, supra,* 60 Cal.App.3d at p. 642; *Westinghouse Elec. Corp.* v. *County of Los Angeles* (1974) 42 Cal.App.3d 32, 42-44 [116 Cal.Rptr. 742]; *Litchfield* v. *County of Marin* (1955) 130 Cal.App.2d 806, 816-817 [280 P.2d 117].) The theory underlying this conclusion is apparently that annually assessed ad valorem property taxes are well known to the property owner and therefore he has an obligation to be on alert to protect his rights against delinquency concerning those taxes. (*Philbrick* v. *Huff, supra,* 60 Cal.App.3d at p. 647.) This theoretical basis is consistent with the above quoted portions of *Mullane.* The very nature of annually assessed ad valorem property taxes is such that a property owner is already on notice that he should be receiving a bill every year in the mail and that if he does not the taxes will become delinquent and the property might be sold to the state to satisfy them. This sharply contrasts with the situation in *Mullane* in which the known beneficiaries, particularly those who lived outside New York, had no reason to be alert to protect their rights with regard to the trust fund there involved. (*Sears* v. *County of Calaveras* (1955) 45 Cal.2d 518, 521-522 [289 P.2d 425].)

Appellant places reliance upon this court's recent decision in *Johnson v. Alma Investment Co.* (1975) 47 Cal.App.3d 155 [120 Cal.Rptr. 503]. *Johnson,* however, is distinguishable from the case at bar because *Johnson* involved an irregular assessment by a local water storage district. Unlike with the annually assessed ad valorem property tax, there was no reason for the property owners in *Johnson* to be on guard to protect their interests. Consequently, this court held due process was not satisfied in the water storage district's failure to utilize the address of the property owner which was readily available from both the tax assessor and tax collector to provide direct mail notice. Footnote 3, page 160, of the *Johnson* opinion implicitly supports the very distinction here made between the *Johnson* situation and the case at bar. Likewise, in the recent case of *Philbrick* v. *Huff, supra,* 60 Cal.App.3d 633, the Court of Appeal of the First Appellate District employed the same distinction between annually assessed ad valorem property taxes and special water district assessments. (*Id.* at p. 646.) Thus, the court in *Philbrick* concluded direct mail notice was not required under the same tax sale procedures that are involved herein to satisfy due process and that publication of notice was all that was required.

■ Thus, consistent with the foregoing authority, the conclusion is inescapable that in the instant case appellant has been provided the entirety of his due process rights by the uncontroverted evidence that respondents gave notice by publication prescribed in the tax sale statutes.

■ Appellant argues that since the last sentence of sections 3365 and 3701 was added in 1971 and the default and sale to the state of Lot 170 took place before that date, these sections could not be legally applied to Lot 170. However, since these sections were not invoked by the taxing authority until 1973, the amendments were properly applied to this case. Moreover, both the duty to make a reasonable effort to locate the address of the last assessee and the relief from that duty were placed in the sections by amendment at the same time. The situation is not one where a right has been created by legislation and then sometime later the procedure for obtaining relief with regard to that right is eliminated. Properly viewed, the Legislature is fully within its power to set forth the right or duty in a statute and limit it at the same time in any way it chooses so long as it is not under a constitutional compulsion to leave that right unrestricted. There is no such constitutional compulsion in this case.

■ Appellant further urges that the issue of fraud is a question of fact. (Civ. Code, § 1574.) It is first to be noted that the curative effect of sections 3518 and 3711 can be avoided only by actual fraud, constructive fraud being expressly eliminated as a basis for relief by those sections.

■ While some of the allegations of appellant's complaint may be construed as an effort to plead actual fraud, appellant cannot use his own pleading to oppose a motion for summary judgment. (Code Civ. Proc., § 437c; *Joslin* v. *Marin Mun. Water Dist.* (1967) 67 Cal.2d 132, 148 [60 Cal.Rptr. 377, 429 P.2d 889]; *Dugar* v. *Happy Tiger Records, Inc.* (1974) 41 Cal.App.3d 811, 818 [116 Cal.Rptr. 412].) ■ There is not a hint or suggestion of actual fraud in the other papers submitted in opposition to the motion. Moreover, respondents in their memorandum of points and authorities filed in support of their motion for summary judgment in the trial court indicated appellant conceded at the pretrial conference that there were insufficient facts to establish actual fraud. In his response to the motion for summary judgment, appellant did not deny this concession and solely argued constructive fraud. Likewise, he expressly argued constructive fraud only in his opening brief in this court. From this it must be concluded appellant waived the contention, now weakly argued, that there is a triable issue of fact with regard to actual fraud.

■ Lastly, appellant seeks to recover the excess of the sales price of the property over the tax liability. However, by allowing taxes to become delinquent for a period of over five years and the property having been deeded to the state, appellant forfeited any property interest in the property or the proceeds from the sale. In exercising its sovereign power as owner of the property free and clear of any interest in the taxpayer, the state may sell the property for whatever amount it will bring on the open market to the highest bidder, even if that amount exceeds the amount of the tax liability, or sell the entirety of the property where the sale of only a parcel of it would satisfy the tax obligations. Since the state was the absolute owner of the property there was no obligation to pay appellant the excess of the sales price over the tax liability. (*Mercury Herald Co.* v. *Moore, supra,* 22 Cal.2d 269, 272; *South San Joaquin Irr. Dist.* v. *Neumiller* (1935) 2 Cal.2d 485, 489 [42 P.2d 64]; *Jordan* v. *Beale* (1916) 172 Cal. 226, 228 [155 P. 990]; *Furrey* v. *Lautz* (1912) 162 Cal. 397, 399 [122 P. 1073]; *Merchants' Trust Co.* v. *Wright, supra,* 161 Cal. at

p. 150; *Chapman* v. *Zobelein* (1912) 19 Cal.App. 132, 134 [124 P. 1021] (affd. at 237 U.S. 135 [59 L.Ed. 874, 35 S.Ct. 518]).)

The judgment is affirmed.

Thompson, J.,* and Goldstein, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 3, 1977.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.