[Civ. No. 53937. Second Dist., Div. Two. Oct. 18, 1979.]

WILLIE E. ATKINS et al., Plaintiffs and Respondents, v.
GEORGE KESSLER, Defendant and Appellant.

**COUNSEL**

Barry Bernstein, G. Forsythe Bogeaus and Gerald M. Cotes for Defendant and Appellant.

Satzman & Smolen, Geffner & Satzman and Richard E. Satzman for Plaintiffs and Respondents.

Stanley Di Orio and Ronald S. Javor as Amici Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**BEACH, J.**—Respondents Willie E. Atkins and Melissa L. Atkins sued to set aside a deed executed by the Treasurer of the City of Los Angeles in October 1974, in favor of appellant George Kessler following foreclosure of a street improvement assessment lien on respondents' property pursuant to the provisions of the Improvement Act of 1911. (Sts. & Hy. Code, § 5000 et seq.)[1] The trial court quieted title in favor of respondents and declared parts of the Improvement Act of 1911 unconstitutional. This court affirmed the judgment of the trial court in an opinion filed on February 22, 1979 (No. 53937). The California Supreme Court granted a hearing but later retransferred the cause to this court "for reconsideration in light of *Kaufman* v. *Gross & Co.* (1979) 23 Cal.3d 750 [153 Cal.Rptr. 577, 591 P.2d 1229]."

### FACTS:

Since 1955 respondents have been the owners of the property at 2204 Cambridge Street in the City of Los Angeles. The city made street improvements and some time in 1971 assessed owners of the affected parcels for repayment of the improvement bond. The owners included respondents. Respondents never made any payments. On October 25, 1972, the city treasurer mailed a notice of sale to respondents (§ 6501) and subsequently duly published notice (§ 6503). On June 2, 1973, respondents moved to 4344 Victoria Park Drive in the City of Los Angeles. On June 18, 1973, the city sold the Cambridge Street property to appellant for $168.40, the amount of the delinquency. On September 24, 1974, a notice-of appellant's application for a deed to the subject property was mailed to respondents and, because the property was then unoccupied, also posted at the Cambridge Street property (§ 6550.) On October 25, 1974, the city treasurer issued a deed to the Cambridge Street property to appellant.

---

[1]All section references, unless otherwise indicated, are to the Streets and Highways Code.

The facts regarding sale, notice, publication, and posting are not in dispute. It is, however, stipulated that respondents never received any notice and had no actual notice or knowledge of the proceedings leading to issuance of the treasurer's deed to appellant until some time in 1975, more than six months after such issuance.

## CONTENTIONS ON APPEAL:

On the initial appeal, appellant contended: (1) The trial court erred in finding that the code sections failed to provide due process and were therefore unconstitutional; (2) the treasurer's deed issued to appellant is primary evidence of regularity of proceedings and therefore conveys absolute title to the property; and (3) because the action was brought more than six months after issuance of the treasurer's deed, it is barred by the six-month period of limitation of section 6571.

Respondents and amicus basically presented these arguments: (1) The Improvement Act of 1911 violates due process because it fails to provide for notice and hearing prior to the sale of the assessed property; (2) the act is similarly unconstitutional because its provisions are not reasonably calculated to inform the property owner of the sale proceedings and of his right of redemption; (3) the procedures permit unconscionably low sales prices and thus also violate substantive due process; and (4) the six-month statute of limitations is no bar to the action where the statutory scheme violates due process of law requirements in the other three respects.

Appellant, respondents, and amicus all have filed supplemental briefs following retransfer of this matter in light of *Kaufman* v. *Gross & Co.,* 23 Cal.3d 750 [153 Cal.Rptr. 577, 591 P.2d 1229]. Respondents and amicus basically contend that unlike the plaintiff in *Kaufman* who as a subsequent purchaser should have known of the recorded sale of the property to the defendants and thus was barred by section 6571's six-month period of limitations, respondents, by virtue of their possession of the property at the time of its sale to appellant, had no constructive knowledge of the pertinent events. Appellant, on the other hand, argues that respondents' possession is irrelevant in view of his tax delinquency. This very fact, appellant claims, operates to charge respondents with constructive notice that any action attacking the tax deed's validity must be brought within the statutory time.

## DISCUSSION:

In light of *Kaufman,* the first issue we have to address ourselves to is whether respondents had constructive knowledge[2] of the pertinent events. If they had, their attack on the validity of the treasurer's deed to appellant is barred by section 6571, which imposes a six-month period of limitation on such actions. In that event, we need not reach the further question whether the statutory scheme of notice and sale involved here complies with constitutional guarantees of due process. We hold, however, for reasons set forth below, that the provisions of section 6571 do not operate as a bar in the instant case.

In *Kaufman* the California Supreme Court held that the provisions of section 6571, providing that an action attacking the validity of a treasurer's deed must be commenced within six months after the issuance thereof, will run against an owner who has constructive knowledge of the acquisition of title adverse to him. At the time of the conveyance to the plaintiff in *Kaufman,* the certificate of sale to the defendants for tax delinquency appeared of record, having been recorded against the property 15 months prior to the conveyance to the plaintiff and 14 months before the conveyance to his predecessor. (*Id.,* at p. 757.) Because a purchaser of real property is charged with the duty of examining the public records to ascertain that no one has acquired title adverse to him, the plaintiff in *Kaufman,* a subsequent purchaser, reasonably was deemed to have constructive notice of the recorded sale to the defendants.

However, where, as here, the party against whom the statute of limitation is raised has been an owner in possession during the entire period of delinquency and sale, it would be unreasonable to charge him with a duty of conducting a title search of property in his possession. As the *Kaufman* court stated: "No case of this court, in fact—or of any other appellate court in this state insofar as we are aware—has held the rule of *Tannhauser* and *Elbert* (holding that even 'jurisdictional' defects arising from a lack of notice of proceedings are subject to a reasonable statutory period of limitation) to be applicable in cases involving an owner in possession at the time of all or a part of the tax proceedings." (*Id.,* at pp. 756-757.) Citing its decision in *McCaslin* v. *Hamblen,* 37 Cal.2d 196 [231 P.2d 1], which involved delinquent taxes on unimproved parcels of land used for grazing purposes, the *Kaufman* court then noted at page 757, footnote 4: " '[W]hatever may be the rights of an owner in

[2]As mentioned earlier, it was stipulated that respondents had no actual knowledge of the pertinent events.

possession, the rule has no application in cases of unimproved and unoccupied land where the only possession is that which is presumed from the fact of conveyance.' " (Citation omitted.)

Appellant argues that respondents' possession of the property notwithstanding they had constructive notice of the proceedings simply by virtue of their status as tax-delinquent owners. In support of this argument, appellant relies on certain language which the *Kaufman* court for the most part cites from its earlier decision in *Sears* v. *County of Calaveras,* 45 Cal.2d 518, 522 [289 P.2d 425]: "[A]n owner who is *himself* delinquent may not be said to be in 'undisturbed possession' because the very fact of his delinquency operates to charge him 'with notice that if he claims the invalidity of a tax deed to the state or of the proceedings leading up to it he must bring his action for that purpose within the statutory time.' " (*Kaufman, supra,* at p. 756.)

However, *Sears,* the case cited in *Kaufman,* involved delinquency of ordinary property taxes. The case at bench, on the other hand, involves a special street improvement assessment lien. ■ As we shall discuss more fully later in this opinion, the owner of real property can reasonably expect that his property will be taxed and that he will receive periodic notice thereof. In contrast, in the situation of a special assessment, as is involved here, notice is not expected as a routine matter. In the latter category, only a small group of property owners is affected by a separate special assessment for improvements. Not everyone in this group is necessarily familiar with the assessment procedure for improvement bonds. Hence, it would be unreasonable to expect all of the specially assessed property owners to understand notices of special assessment and delinquency. Thus, unlike the situation of a property owner delinquent in ordinary real estate taxes, we do not believe that the very fact of the specially-assessed property owner's delinquency, as is involved here, operates to charge him " 'with notice that if he claims the invalidity of a tax deed . . . he must bring his action for that purpose within the statutory time.' " (*Kaufman, supra,* 23 Cal.3d 750 at p. 756.)·

We note that in *Elbert, Ltd.* v. *Gross,* 41 Cal.2d 322 [260 P.2d 35], which like the case at bench involved the sale of real property following foreclosure on a street improvement bond, the California Supreme Court held that the attack on the treasurer's deed was barred because it was not instituted within the prescribed statutory period of section 6571. However, *Elbert* involved unimproved and unoccupied land and the only complaint made by the party attacking the deed was that it had not

received proper notice of the purchaser's application for a treasurer's deed. (*Id.*, at pp. 325, 328, 330.) There was no allegation that any other notices were not received. In the present case, not only had respondents no notice of appellant's application for a treasurer's deed but they also had no notice of the proceedings leading to such application.

Additionally, here it was stipulated that "commencing with the 1974 telephone directories, plaintiff WILLIE E. ATKINS' name, address and phone number have been continually listed in the local telephone directory, showing their address to [*sic*] 4344 Victoria Park Drive, Los Angeles, California." Yet, the notice of application for a deed was sent to the Cambridge Street address rather than to respondents' new address at Victoria Park Drive. As record owners of the disputed property, respondents were entitled under section 6550 to written notice of appellant's application for a deed. Within that 30-day period respondents had the right to redeem (§ 6550), and until the giving of such notice respondents had the right of redemption indefinitely (§ 6551). Section 6550 requires the purchaser to mail a written notice to the owner of the property purchased, "as his name and address appear on the last equalized assessment roll if they so appear or as known to the clerk . . . ." Since respondents' current address was listed in the local telephone directory at the time the notice of application for the deed was sent to respondents (cf. *Sim* v. *Peterson,* 102 Cal.App. 417, 418-419 [283 P. 376]), the mailing of the notice to the disputed property's address rather than to respondents' new address was not "notice reasonably calculated, under all the circumstances, to . . . afford [respondents] an opportunity to present their objections." (*Mullane* v. *Central Hanover Tr. Co.,* 339 U.S. 306, 314-315 [94 L.Ed. 865, 873, 70 S.Ct. 652].) Under these circumstances, appellant's failure to send notice to respondents' new address has resulted in depriving respondents of their property without due process of law.

We conclude that under the totality of circumstances the action of respondents is not barred by section 6571's period of limitation.

We now address ourselves to the adequacy of the notice provisions involved here.

 It is well established that: ". . . a person's property may not be taken from him without due process of law and that a fundamental requisite of due process is notice, reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of

proceedings which could result in a deprivation of a person's property so as to afford him an opportunity to be heard. [Citations.]" (*Philbrick* v. *Huff,* 60 Cal.App.3d 633, 641 [131 Cal.Rptr. 733].) The kind of notice that due process requires is one ". . . which, according to common experience, should reasonably give notice of impending interference with ownership or right of possession. [Citation.]" (*McMaster* v. *City of Santa Rosa,* 27 Cal.App.3d 598, 602 [103 Cal.Rptr. 749].) Sometimes actual notice is not received or for some reason cannot be given. Therefore, statutes provide for publication of notice. ■ As a further general rule, publication of notice in the ordinary real property tax collection case is all of the due process notice to which a delinquent taxpayer is entitled. Additional notices of sale are not necessary before the sale. In such a case " '[a]s far as the mailing of additional notices of sale prior to the sales to and from the State, or the mailing of any additional notices at all is concerned, such notices could have been done away with or not required by the legislature in the first instance without doing violence to due process.' " (*McMaster* v. *City of Santa Rosa, supra,* 27 Cal.App.3d at p. 605.)

In matters relating to the collection of taxes different considerations other than present at bench apply. The owner of real property can reasonably expect that his property will be taxed. Reasonably, he may expect semiannual or other periodic notices. If he does not receive such notices, it is reasonable to charge him with constructive notice because he should be aware of the fact that the government expects periodic payment from him in the form of property taxes. The right of the government to collect general revenue taxes for the purpose of financing the day-to-day operations of the government far outweighs the need to perfect a fool-proof system of notice whereby any defaulting taxpayer will receive actual notice and an administrative hearing at all stages of the proceedings. (*Phillips* v. *Commissioner,* 283 U.S. 589 [75 L.Ed. 1289, 51 S.Ct. 608].)

On the other hand, in cases such as the present the special assessment tax does not finance the operation of day-to-day government but rather reimburses the bondholder for money used to finance a construction project through the issuance of bonds. A much smaller group than the entire city population is usually involved in a street improvement and the financing therefor. This difference is significant. Not all of the property owners affected by the street improvement are necessarily familiar with the method of assessment and financing for such improvements. It is not reasonable to expect that all of the property owners will understand notices of special assessment and notices of default and notices of

delinquency. As evidenced by the present case, the forms of notice are such that they can be easily misunderstood or perhaps carelessly but in good faith ignored. In both kinds of cases, i.e., general tax delinquency and a special assessment delinquency, a person's property may be taken. However, notice in the latter case is not expected as a routine thing. Even when assessment is imposed and notice given, it may be subject to misunderstanding and thereby the opportunity to remedy more easily may be lost. This warrants a more adequate form of notice calling the delinquent owner's attention in much more direct and simple terms to the danger of losing his property. ■ Therefore, in cases of assessment by a public body, district, government or other entity, for some special purpose other than general taxes, publication alone may be insufficient to meet the procedural due process requirements where such body, district, government, or entity could have notified the owner by direct mail at an address taken from the tax assessor's rolls. (*Johnson* v. *Alma Investment Co.*, 47 Cal.App.3d 155 [120 Cal.Rptr. 503].) Special assessments as at bench are by their very nature unusual to many homeowners. A sense of fair play simply demands that more care be given to notifying the property owner in such case.

Bearing the above principles in mind, we examine the notices given at bench. We find that they are inadequate for several reasons.

■ A. *The notice provisions are inadequate on their face and are not reasonably calculated to clearly and fairly apprise the homeowner of the pending sale proceedings.*

The notice of sale set forth in section 6501 and the actual notice of sale mailed to respondents refers only to the delinquency of "bonds." Under former section 6501 the recommended notice form states: "You are hereby notified that Bond ___, Series ___, for an improvement in the City (or County) of _____, is delinquent." The notice then states that unless the amount due is paid (no specific amount is given) by a particular date "the undersigned will institute proceedings to foreclose the lien of said bond in the manner prescribed by law." This notice is inadequate to give even a hint that a person's home will be sold. There is no reference to the homeowner's property nor a statement as to the amount owed. What will be foreclosed other than a "lien" is never identified.

The actual notice mailed to respondents followed the form suggested in section 6501 but included a very brief legal description. It read, in

pertinent part, "Greetings: [¶] You are hereby notified that Bond No. 329, Series No. 14, issued against Lot 6 Blk E Tract Harvard Hgts. for the improvement of Pico Blvd. in the City of Los Angeles is delinquent, and the holder of said bond has demanded that the Treasurer proceed to advertise and sell the lot or parcel of land described in the bond as being that upon which the assessment represented by the bond was levied." Similarly, the published notice read: "Notice of Sale of Property Delinquent for Non-payment of Bond [¶] No. 329, Series No. 14 issued for the improvement of [¶] Pico Boulevard [¶] Default having been made in the payment of the following named coupons, to wit: . . ." Followed by a listing of dates and money owed. The only mention of the property is a legal description placed indistinctively in the middle of a long column of small print consisting of technical legal words. In addition the statute did not provide for a notice to respondents of the actual sale of their property. Instead only the bondholder was given notice of the time, date, and place of the sale.

Streets and Highways Code section 6501 was amended in 1978 (Stats. 1978, ch. 483) to provide for a better form of notice. The amendment provides that the notice now include the following suggested information and on the following suggested format:

"Important Notice

"*Your property will soon be sold* by the city (or county) unless you pay what you owe for _____ improvement made in your area. To obtain information on how to prevent the sale of your property, immediately call the foreclosure clerk at the city (or county) treasurer's office. The telephone number is _____ to arrange for payment. For more detailed information regarding this matter, read the following: . . ." (Italics added.) Similar changes were made for section 6505 which provides for notice of the actual sale to the homeowner.

The changes made by Statutes 1978, chapter 483, help homeowners in the future. However, they did not apply at the time in question. The notices applicable to this case under the old law were clearly inadequate. The owners were not told in plain English that their property was to be sold. In fact the notice never mentions their property, but rather refers to a "bond" and a "lien."

B. *The use of regular mail to notify a person of prospective loss of property under the circumstances is insufficient.*

Under the notice of sale provisions in effect at the time, respondents were entitled to notice of sale, mailed first class, to the last known address on the tax rolls or as filed in the office of the clerk. (§ 6501.) This provision was also amended by urgency provision on March 12, 1974, to provide for notice of sale by *certified* mail "to the owner of the property as shown on the last equalized assessment roll and to any person whose name appears as an owner on the records of the county assessor's office which the county assessor will use to prepare the next assessor's roll. . . ." (§ 6501.) The amendment clearly provides a broader scope of notice to the property owner than the original provision. Certified mail is more costly and time consuming, but weighing the equities involved it gives better assurance that the owner *is* notified, and the cost can be recouped.

C. *Time, place, and date of sale were not noticed.*

At the time respondents' property was sold there was no provision for notice to the property owners of the time, place and date of the actual sale. The bondholder, on the other hand, was entitled to and here did receive such notice by certified mail. (§ 6505.) This section later was amended also as an urgency measure, effective March 12, 1974, to provide for notice of sale to the homeowner. Thus, the notice provisions in existence at the time respondents lost their property, in terms of content, were not "reasonably calculated, under all the circumstances, to apprise the interested parties" of the sale proceedings. (*McMaster* v. *City of Santa Rosa, supra,* 27 Cal.App.3d at p. 602.)

D. *The notice of application for deed does not provide for adequate notice of respondents' rights to redemption.*

Streets and Highways Code section 6530 provides for a 12-month redemption period following the date of purchase of the foreclosed property. The purchaser, however, was required to give notice of the right of redemption only 30 days prior to *the end* of the redemption period or 30 days before the application for a treasurer's deed. (§ 6550.)

It is stipulated by all parties that appellant mailed to respondents on September 24, 1974, a notice of application for deed pursuant to section 6530, informing respondents that they could redeem the property any time prior to October 25, 1974 (30 days), at which time appellant would

apply for a treasurer's deed. The prior stipulation, however, is that respondents received *no* notices, which thus includes this one.

But even if it had been received the statute was unsatisfactory because it provided only for a last-minute kind of notice, i.e., 30 days before the end of the year within which to redeem. The obvious unfairness of this situation was also corrected under chapter 483; Statutes 1978. A new section 6530.5 was added to require notice of the right to redemption within 10 days of the issuance of the certificate of sale (the start of the 1-year redemption period). Section 6550 was also amended to provide for a notice by certified mail to the property owner, informing him of the purchaser's intention to apply in 60 days for a deed to the purchased property.

We find the statutory scheme defective in the particulars we have discussed above. The judgment of the superior court may be affirmed upon the grounds that under the meaning of due process the statutes formerly did not give sufficient notice. Accordingly, we find it unnecessary to discuss respondents' and amicus curiae's other contentions that the statute should provide for an additional hearing based on principles enunciated in *Sniadach* v. *Family Finance Corp.,* 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820], or that substantive due process is violated because the sale procedure permits unconscionably low sales prices.[3]

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 13, 1979.

---

[3]We have not agreed with all of the suggestions of amicus curiae. However, we commend counsel for amicus curiae for the excellent presentation of the issues and arguments. The presentation was to the point, succinct, and helped the court focus on those points which appeared most important and dispositive.