[Civ. No. 69759. Second Dist., Div. Five. Dec. 13, 1983.]

WILL C. BATTLE et al., Plaintiffs and Appellants, v.
MAX KESSLER et al., Defendants and Respondents.

## COUNSEL

Lane & Friedman and Barry J. Lane for Plaintiffs and Appellants.

Larr & Lunetta and William R. Larr for Defendants and Respondents.

## OPINION

**FEINERMAN, P. J.**—Will C. and Edgar Battle (plaintiffs) purport to appeal from an order sustaining the demurrer of Max Kessler, Marilyn Kessler and George Kessler (defendants) to plaintiffs' first amended complaint without leave to amend. ■ An order sustaining a demurrer is not appealable. (*Dollar-A-Day Rent-A-Car Systems, Inc.* v. *Pacific Tel. & Tel. Co.* (1972) 26 Cal.App.3d 454, 456, fn. 1 [102 Cal.Rptr. 651]; *Beazell* v. *Schrader* (1962) 205 Cal.App.2d 673, 674 [23 Cal.Rptr. 189].) However, in this case an order of dismissal was entered based on the order sustaining the demurrer. Accordingly, we construe plaintiffs' notice of appeal as referring to the appealable order of dismissal. (*Call* v. *Los Angeles County Gen. Hosp.* (1978) 77 Cal.App.3d 911, 915 [143 Cal.Rptr. 845]; *Gregory* v. *Hamilton* (1978) 77 Cal.App.3d 213, 215, fn. 1 [142 Cal.Rptr. 563].)

### SUMMARY OF COMPLAINT

Plaintiffs' original complaint was filed on December 7, 1982. Their first amended complaint contains five causes of action. In their first cause of action, to quiet title, plaintiffs allege that, as joint tenants, they are the fee owners of real property located at 1036 West 48th Street in the City of Los Angeles (subject property). The City of Los Angeles made assessments against the subject property for repayment of street improvement bonds. The assessments went unpaid. ■ A street improvement assessment constitutes a lien against the subject property pursuant to Streets and Highways Code section 6446. Plaintiffs allege that on June 18, 1973, following foreclosure of the street assessment lien on the subject property (Sts. & Hy. Code, § 6500 et seq.), the treasurer of the City of Los Angeles executed a

certificate of sale of the subject property to defendant George Kessler for the sum of $183.39. Plaintiffs allege that the certificate of sale was recorded on June 29, 1973, and that a treasurer's deed to the subject property was issued in the name of George Kessler and was recorded on November 18, 1974.

Plaintiffs allege further that, although they resided at the subject property at all times alleged in the complaint, they did not receive notice of: (1) any assessment upon the subject property; (2) any notice of repayment due; (3) the foreclosure upon the subject property; (4) the time, place and date of the actual sale of the property; (5) the issuance of the certificate of sale of the treasurer's deed; (6) defendant Kessler's application for a deed; or (7) their redemption rights.

Plaintiffs allege that on January 6, 1978, defendants George and Edna Kessler deeded the subject property to defendants Max D. and Marilyn Kessler and that Max D. and Marilyn Kessler took title to the subject property "with full knowledge of the manner in which it was acquired." On March 9, 1978, almost five years after the foreclosure sale, Max Kessler served plaintiffs with a three-day notice to quit the subject property. Plaintiffs allege that by reason of the foregoing they have been deprived of their property without due process of law.

In their second cause of action, plaintiffs claim that, because of the foregoing, defendants were "unjustly enriched at the expense and to the detriment of plaintiffs," because: (1) defendants acquired property having a fair market value in excess of $150,000 for approximately $183.39; (2) defendants collected rent from the property from March 9, 1978 to trial; (3) defendants, by evicting plaintiffs, acquired substantial personal property left on the premises; (4) defendants failed to notify plaintiffs of the sale during the period November 1974 to March 1978, thus allowing plaintiffs to improve the subject property and pay property taxes; and (5) plaintiffs were unjustly forced to acquire other living quarters from March 1978 to the present.

In their third cause of action, plaintiffs seek an accounting of rentals received by defendants with respect to the subject property.

The fourth cause of action alleges that defendants fraudulently concealed and suppressed the fact of the foreclosure sale, the acquisition of the treasurer's deed and plaintiffs' redemption rights "with the intent to defraud plaintiffs by causing plaintiffs to be unaware of said transaction [and causing plaintiffs to] fail to exercise any rights of redemption they had in regards to said property, and thus lose all of their right, title and interest in said real property."

In plaintiffs' fifth cause of action, they allege that defendants' conduct constituted intentional infliction of emotional harm.

Defendants filed a general demurrer based on the ground that "the First Amended Complaint fails to state facts sufficient to constitute a cause of action against these demurring parties because of expiration of applicable statutes of limitation." The trial court sustained defendants' demurrer to all counts on that ground without leave to amend. At oral argument plaintiffs' counsel stated that plaintiffs are appealing only from the trial court's ruling as to plaintiffs' first cause of action, to quiet title. We have concluded that the trial court erred in sustaining defendants' demurrer to the first cause of action of plaintiffs' first amended complaint and that the order of dismissal must be reversed.

## DISCUSSION

In 1973, when the subject property was originally sold to defendant George Kessler pursuant to the foreclosure proceedings, and in 1974 when the treasurer's deed was actually issued, Streets and Highways Code section 6571 provided that any action attacking the validity of such a deed "must be brought within six months after the issuance of the deed, and if the validity of the deed or of the proceedings is not contested within that six months' period, it shall not be thereafter contested or questioned in any action, suit or proceeding." In 1978 the limitation period was extended from six months to twelve months. (Stats. 1978, ch. 483, § 9, p. 1613.) In 1979 the Second District Court of Appeal decided a case entitled *Atkins* v. *Kessler* (1979) 97 Cal.App.3d 784 [159 Cal.Rptr. 231].[1] In that case, just as in the case before us, owners of property brought suit to set aside a treasurer's deed executed in favor of George Kessler after foreclosure of a street improvement assessment lien. It was stipulated that plaintiffs never received any notice and had no actual notice or knowledge of the proceedings leading to issuance of the treasurer's deed until more than six months after issuance of the deed. The trial court quieted title in favor of plaintiffs and the Court of Appeal affirmed. The court held that since plaintiffs were owners in residence it was unreasonable to expect that they would search the title to their property. Accordingly, the court held that recordation of the treasurer's deed did not constitute constructive notice of the foreclosure sale and that the provisions of Streets and Highways Code section 6571, imposing a six-month period of limitation on actions attacking the validity of a treasurer's deed, did not operate as a bar to the case. The court also held that the notice provisions of the Improvement Act of 1911 in effect prior to 1978 did not give sufficient notice of foreclosure proceedings to satisfy due process requirements.

---

[1]The Kessler involved in *Atkins* v. *Kessler, supra,* 97 Cal.App.3d 784 is George Kessler, one of the defendants named herein as the original purchaser of the subject property at the treasurer's foreclosure sale.

In response to *Atkins* v. *Kessler, supra,* the Legislature made certain changes in the Improvement Act of 1911, including amending section 6571 (Stats. 1982, ch. 1443, § 6, p. 5512, urgency, eff. Sept. 27, 1982) to provide that in the case of *"owner-occupied residential property"* an action to contest the validity of a deed issued under division 7 "may be brought within twelve months *after discovery* of the issuance of the deed." (Italics added.) The section was also amended to provide as follows: "for owner-occupied residential property sold between January 1, 1969, and January 1, 1979, [suit may be brought] within 12 months after the enactment of the amendments to this section made during the 1981-82 Regular Session of the Legislature."

According to their complaint, plaintiffs' property was sold to defendant George Kessler in June 1973 and a treasurer's deed was issued to George Kessler and recorded in November 1974. Plaintiffs had no notice of the sale until on or about March 1978, when they were served with a three-day notice to quit their property. They filed this suit on December 7, 1982, within 12 months after the enactment of the amendment to section 6571.

█ Was the action timely filed? We hold that it was. The amendment to section 6571 also specifically provided as follows: "The Legislature finds and declares that the court of appeal in *Atkins* v. *Kessler,* 97 Cal.App.3d 784, held that under the former provisions of this division the statute of limitations in this section could not be raised against an owner in possession of residential real property during the entire period of delinquency and sale because due process was violated. It is therefore *the intent of the Legislature* that the amendments to this section made during the 1981-82 Regular Session of the Legislature *shall be applied retrospectively with respect to any owners in possession of residential real property* during the entire period of delinquency and at the time of sale *whose homes were sold pursuant to this act between January 1, 1969, and January 1, 1979."* (Italics added.)

█ Generally, statutes are not to be given retroactive effect unless the Legislature clearly intended such a result. (*Balen* v. *Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 830 [114 Cal.Rptr. 589, 523 P.2d 629]; *Bolen* v. *Woo* (1979) 96 Cal.App.3d 944, 957 [158 Cal.Rptr. 454].) With respect to statutes of limitation, the court in *Douglas Aircraft Co.* v. *Cranston* (1962) 58 Cal.2d 462 [24 Cal.Rptr. 851, 374 P.2d 819, 98 A.L.R. 2d 298] stated at page 465: "The law governing changes in the statute of limitations is summarized in *Evelyn, Inc.* v. *California Emp. Stab. Com.* 48 Cal.2d 588, 592 [311 P.2d 500] . . .: 'The extension of the statutory period within which an action must be brought is generally held to be valid if made before the cause of action is barred. [Citation.] The party claiming to be adversely affected is deemed to suffer no injury where he was under an obligation to pay before the period was lengthened. This is on the theory that the legislation affects only the remedy and not a right. [Citations.] . . . . It has been

held that *unless the statute expressly provides to the contrary* any such enlargement applies to matters pending but not already barred. [Citation.]'" (Italics added.)

With respect to the 1982 amendment to Streets and Highways Code section 6571, the Legislature clearly expressed its intention that the statute apply retroactively to a designated group of persons, that is "owners in possession of residential real property during the entire period of delinquency and at the time of sale whose homes were sold pursuant to this act between January 1, 1969 and January 1, 1979." As to that group, the Legislature expressly provided an extended 12-month period of limitations within which suits could be brought to attack the validity of a treasurer's deed issued after foreclosure of an assessment lien.

Defendants contend that the Legislature did not intend to extend the limitation period for owner-occupiers having actual notice. Defendants point to the fact that plaintiffs had actual notice of the sale in March 1978 when they were served by defendants with a three-day notice to quit their property. Notice at that point in time was not efficacious for the plaintiffs. Their cause of action to attack the deed had, under the then applicable provisions of Streets and Highways Code section 6571, been barred six months after recordation of the deed in 1974, four years previously. The notion that the limitation period as to owner occupied residential property did not commence to run until discovery of the issuance of the deed was not introduced into the law until the 1982 amendment. In *Atkins* v. *Kessler, supra,* 97 Cal.App.3d 784, the court held, in effect, that the statute of limitations contained in section 6571 could not be asserted as a defense to a suit by an owner of residential real property who was in possession thereof during the period of delinquency and at the time of sale if his home was sold between January 1, 1969 and January 1, 1979.[2]

The Legislature realized that the effect of *Atkins* was to suspend the statute of limitations for persons who had lost their homes under the old defective foreclosure scheme. To limit the possible flood of ensuing litigation, the Legislature acted to impose a new period of limitation for such actions, to wit: twelve months from the effective date of the amendatory legislation. Furthermore, the Legislature acted to protect subsequent purchasers from one who bought at the foreclosure sale by specifically providing in section 6571 that, "A defense to a proceeding pursuant to this section shall be that the current owner of record is a bona fide purchaser for value." In the complaint before us, plaintiffs alleged that the present record owners were not bona fide purchasers.

---

[2]January 1, 1979 is the cutoff date because that is when amendments to various sections of the Improvement Act took effect which were designed to give such an owner explicit and adequate notice of assessment and foreclosure proceedings.

Defendants argue that the new extended limitations provisions of section 6571 were meant to apply only to owner-occupiers in cases where a treasurer's deed had not yet been issued to the purchaser after the foreclosure sale. If the Legislature intended such a limitation, they would have so stated in the statute itself. There is nothing in the statutory language that would lend itself to such an interpretation. ■ "It is axiomatic that in the interpretation of a statute where the language is clear, its plain meaning should be followed." (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].)

Finally, defendants contend that their "rights are vested and cannot be retroactively abrogated by subsequent enactment of amended section 6571." Defendants contend that the effect of amended section 6571 was to revive causes of action that had been finally barred by the prior statute of limitations. As noted previously, we see the purpose of the Legislature in amending 6571 as an attempt to impose a new limitations statute upon potential causes of action revived by the precedent set by the court's opinion in *Atkins* v. *Kessler.* However, even if we were to interpret the amendment as an attempt to revive otherwise barred causes of action, the legislation would not run afoul of the due process clause. ■ The law generally attempts to protect vested property rights against interference from retroactive application of laws. However, such vested rights are not sacrosanct. (*Addison* v. *Addison* (1965) 62 Cal.2d 558, 566 [43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391].) "In determining whether a retroactive law contravenes the due process clause, we consider such factors as the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions. [Citations.]" (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 [128 Cal.Rptr. 427, 546 P.2d 1371].)

The state's interest in putting a cap on the potentially unlimited flood of litigation (by former homeowners whose homes were taken without due process of law under the former provisions of the Improvement Act of 1911) which was unleashed by the court's opinion in *Atkins* is clearly of sufficient importance to justify this legislation. Additionally, the state had a legitimate interest in attempting to right a wrong created by its own defective legislation. The retroactive application was necessary because it was the only way the Legislature's purposes could be accomplished. The Legislature sought to balance the competing interests of purchasers at foreclosures under the Improvement Act and displaced homeowners by limiting the exercise of homeowner's rights under *Atkins* to a 12-month period. They were also careful to provide a defense to the displaced homeowner's suit where the

property had been resold to a bona fide purchaser for value. ▮ ▮▮▮ ▮ ▮ Even if it can be said that the legislation here had the effect of retroactively impairing defendants' vested rights, rather than merely putting a limitation on homeowners' rights revived by the opinion in *Atkins,* we believe the legislation was justified and comported with the dictates of due process.[3]

The judgment of dismissal is reversed with instructions to overrule defendants' demurrer to the first cause of action of plaintiffs' first amended complaint.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied January 10, 1984.

---

[3]This constitutional guaranty demands only that a law shall not be unreasonable, arbitrary, or capricious, and that the means selected "shall have a real and substantial relation to the object sought to be attained." (*Nebbia* v. *New York* (1934) 291 U.S. 502, 525 [78 L.Ed. 940, 950, 54 S.Ct. 505, 89 A.L.R. 1469].)