[No. S142211. June 16, 2008.]

FRANK MAYER et al., Plaintiffs and Respondents, v.
L&B REAL ESTATE, Defendant and Appellant.

## COUNSEL

Ezer Williamson & Brown and Mitchel J. Ezer for Defendant and Appellant.

Steven W. Weinshenk, Edward Ovetsky; Stephan, Oringher, Richman, Theodora & Miller, Buchalter Nemer, Harry W. R. Chamberlain II, Gregory James Stephan and Robert M. Dato for Plaintiffs and Respondents.

## OPINION

**MORENO, J.**—Frank and Josie Mayer brought an action to quiet title after they learned that a small portion of a piece of commercial property they owned had been sold at a tax sale. The trial court ruled that the Mayers had not been given adequate notice of the tax delinquency and tax sale, but the Court of Appeal reversed the resulting judgment, ruling that the Mayers' action was barred by the statute of limitations because they "had constructive and actual notice of the tax sale, providing them with ample time to comply with the one-year limitations period." We disagree. The Mayers were in undisturbed possession of the property until they received notice that a

portion of their property had been sold; the one-year statute of limitations did not begin to run until that time. They filed the present suit within a year after receiving that notice. Accordingly, their action to quiet title was timely filed.

FACTS

On December 16, 1991, plaintiffs Frank and Josie Mayer purchased from Mark Gabay, Norman Gabay and Arman Gabaee a piece of commercial property on La Brea Avenue in Los Angeles on which there was an AutoZone auto parts store. The grant deed described the property as consisting of three parcels. Parcel one was lots 508 and 509 of tract No. 1466 and parcels two and three formerly had been portions of La Brea Avenue.[1] Each year following their purchase, plaintiffs received from the Los Angeles County Tax Collector (hereafter Tax Collector) assessments for property taxes in amounts that increased from over $14,000 per year to more than $17,000 per year, which the Mayers timely paid.

On June 20, 2001, the Mayers received from the Tax Collector by certified mail an "Official Notice of Auction" of property described as "POR OF VAC ST ADJ LOT 509 TR NO 1446 ON E." The notice listed the "Assessee Name" as "MOON, HENRY S AND CHONG I." The amount to redeem the property was $4,780.98 The notice stated: "Public records indicate you may have an interest in the property described below. This property is scheduled for sale at public auction to the highest bidder. If you do <u>NOT</u> have an interest in this property or believe we have sent you this notice in error, please return this notice by writing on the envelope '<u>WRONG PARTY, RETURN TO SENDER</u>' and drop in your nearest U.S. mailbox . . . ."

The Mayers compared the assessor's parcel number listed on the notice (map book 5049, page 013, parcel 44) with the number on their tax bills (5049 013 047) and noticed that the parcel numbers differed. They also saw that the property description on the notice did not match the property description on their deed, and they had not heard of the named assessees, Henry and Chong Moon. The Mayers telephoned either the assessor's office or the Tax Collector to discover the address of the property being auctioned, but whichever office they called could not provide the address of the parcel. Concluding that the notice had been sent to them in error, they followed the instructions on the notice and returned the notice to the Tax Collector.

---

[1] The grant deed described parcel two as "that portion of La Brea Avenue, vacated by ordinance of intention" with a metes and bounds description. Parcel three was described as "that portion of La Brea Avenue, formerly 28th Avenue" with a metes and bounds description.

Unbeknownst to the Mayers, the property to which the notice referred consisted of the second and third parcels described in their deed. This roughly triangular piece of property was adjacent to the auto parts store and supported a large, two-story-high sign that read AutoZone. Henry and Chong Moon had owned the La Brea Avenue property when they purchased this parcel from the City of Los Angeles in 1988. In 1989, the Moons recorded an agreement to hold as one parcel the three parcels later described in plaintiffs' grant deed. That same year, the Moons sold the consolidated property to Bastian Development Corporation, which in the same transaction conveyed the property, through an intermediary, to the Gabays and Gabaee, who later sold the property to the Mayers.

Despite the fact that the three parcels comprising the La Brea Avenue property had been consolidated, the assessor's office listed the property as two separate parcels, both identified as appearing on page 13 of map book 5049. Parcel 47 included the double lot upon which stood the store, and parcel 44 consisted of the roughly triangular piece of land upon which stood the sign. Listing the property under separate parcel numbers was a departure from the assessor's normal procedure for handling consolidated properties, but this error was compounded by a more serious error; the assessor's office mistakenly assessed parcel 44 in the name of Henry and Chong Moon, leading the Tax Collector to send the property tax bill and other notices for this parcel to them. Not surprisingly, the tax bill of $231.75 for fiscal year 1992–1993 was not paid and notices of delinquency went unheeded. In June 1993, the parcel was declared to be tax-defaulted.

These errors remained undetected until May of 2001 when parcel 44 was scheduled for tax sale on August 6, 2001. On May 17, 2001, the Tax Collector sent a letter to the assessor's office noting that there was "a discrepancy in the ownership" of several properties that were scheduled for the August tax sale, one of which was parcel 44. The letter noted that "the name of the owner of record" differed from the information supplied by the assessor's office and asked the assessor's office to conduct an investigation "to determine who is the correct owner" of the parcels.

Despite discovering the error, the Tax Collector continued with the tax sale and sent to the Mayers the notice of auction described above, which the Mayers returned, believing the notice had been sent to them in error. On August 6, 2001, parcel 44 was sold at auction to L&B Real Estate for $24,000 and a tax collector's deed was executed.

By letter dated November 2, 2001, the Tax Collector notified the Mayers that parcel 44 had been "sold at public auction for nonpayment of taxes" and that they could "file a claim for any excess proceeds." This notice, for the first time, listed Frank and Josie Mayer as the "assessee."[2] The Mayers went to the assessor's office, where a review of the official maps confirmed their fear that a portion of their property had been sold. They were referred to another branch of the assessor's office before being told to go to the Tax Collector's office.

On January 29, 2002, the Mayers explained to a representative of the Tax Collector that a portion of their property apparently had been sold even though they never had received a tax bill or notice of delinquency. They were sent to a second representative, who asked them to reduce their complaint to writing. Plaintiffs sent the Tax Collector a letter dated February 11, 2002, attempting to "reinstate[] this property." The Tax Collector responded by letter dated February 15, 2002, that it had "no legal basis to cancel the sale, as you were properly notified of the sale of the subject parcel." In a second letter dated April 16, 2002, the Tax Collector repeated "that the sale of the subject property is valid. Therefore, your request to cancel the sale is denied."

Plaintiffs contacted their title insurance carrier, but were told the property had been sold legally.

On September 7, 2002, L&B Real Estate informed AutoZone that it was the owner of parcel 44 and wished to negotiate a lease agreement. AutoZone agreed to pay L&B Real Estate rent of $1,800 per month beginning on October 1, 2002, which sum it deducted from the rent it paid to the Mayers.

On October 11, 2002, more than one year after the tax sale but less than one year after the Tax Collector's letter notifying the Mayers of the sale, the Mayers filed the present action to quiet title to parcel 44.

Following a court trial, the court entered judgment for the Mayers declaring the tax sale void, ordering the Tax Collector to transfer to the Mayers $18,268.87 in "excess proceeds" from the tax sale, and ordering L&B Real Estate to pay to the Mayers $17,446.48, which represented the $43,200 L&B Real Estate had collected in rents from AutoZone offset by the $24,145.90 L&B Real Estate had paid at the tax sale plus $1,607.62 it had paid in taxes.

---

[2] The record does not disclose the exact date the Mayers received this letter.

The Court of Appeal reversed the judgment on the ground that the action was barred by the one-year statute of limitations set forth in Revenue and Taxation Code section 3725. That court reasoned that the Tax Collector's November 2, 2001 letter gave the Mayers actual notice of the tax sale "within three months of the limitations period's triggering event—execution of the Tax Collector's deed . . . on August 6, 2001." The Court of Appeal concluded that plaintiffs "had actual notice of every fact necessary to bring their quiet title action, and ample time to do so, before the one-year limitations period expired."

DISCUSSION

■ It long has been the law that whether a statute of limitations bars an action to quiet title may turn on whether the plaintiff is in undisturbed possession of the land. (*Tannhauser v. Adams* (1947) 31 Cal.2d 169, 175 [187 P.2d 716] [" 'as a general rule, the statute of limitations does not run against one in possession of land' "].) In *Smith v. Matthews* (1889) 81 Cal. 120 [22 P. 409], a mistake in a deed purported to grant more land than was intended, but the holder of this deed never took possession of this land, which "remained in the actual possession of the plaintiffs." (*Id.* at p. 121.) This court held that the plaintiffs' action to quiet title brought "many years" later was not barred by the statute of limitations, because: "The right of the plaintiffs to have their title to the land quieted, as against a claim asserted by the defendant under this deed, was not barred, and could not be, while the plaintiffs and their grantors remained in the actual possession of the land . . . ." (*Ibid.*) The reason for this rule later was explained in *Muktarian v. Barmby* (1965) 63 Cal.2d 558, 560–561 [47 Cal.Rptr. 483, 407 P.2d 659]: "In many instances one in possession would not know of dormant adverse claims of persons not in possession. [Citation.] Moreover, even if . . . the party in possession knows of such a potential claimant, there is no reason to put him to the expense and inconvenience of litigation until such a claim is pressed against him. [Citation.]"

■ *Sears v. County of Calaveras* (1955) 45 Cal.2d 518, 521 [289 P.2d 425], recognized the general rule "that a statute limiting the time for the commencement of an action to set aside a deed to the state for delinquent taxes does not apply to an owner in exclusive and undisputed possession of the property taxed," but clarified that this general rule does not apply "as against a special statute of limitation foreclosing the commencement of an action to set aside a deed to the state for delinquent taxes" unless a jurisdictional defect is alleged. We restated this same rule in *Kaufman v. Gross & Co.* (1979) 23 Cal.3d 750, 755 [153 Cal.Rptr. 577, 591 P.2d 1229],

explaining that "a 'jurisdictional' defect in tax sale proceedings which arises from a failure of notice . . . may be barred by a reasonable statutory period of limitation in cases wherein the party against whom the statute is raised is not an owner in 'undisturbed possession' at the time of such proceedings."

The Court of Appeal in the present case held that the Mayers' action to quiet title was barred by Revenue and Taxation Code section 3725, which provides that "[a] proceeding based on alleged invalidity or irregularity of" a sale of tax-defaulted real property "can only be commenced within one year after the date of execution of the tax collector's deed."[3] When this statute of limitations was enacted in 1939, the code commission notes to section 3725 acknowledged that "[t]he statute of limitations in this section would not apply to cases of a jurisdictional invalidity where the original owner was still in possession of the property. [Citations.]" (Code Com. Note, reprinted at 59B West's Ann. Rev. & Tax. Code (1998 ed.) foll. § 3725, p. 88; see *Tannhauser v. Adams, supra,* 31 Cal.2d 169, 175 [" ' "So long as the original owner of land which has been sold for taxes remains in undisturbed possession of it, the statute of limitations does not run against him or prevent the maintenance of a suit to set aside the tax sale or remove the cloud on his title." ' "].) In the present case, the Mayers alleged a jurisdictional defect, claiming that the deed is invalid because the Tax Collector denied them due process by failing to give them adequate notice of the tax sale.

■ But the rule that the statute of limitations does not bar an action to quiet title by an owner in undisturbed possession of land does not apply if the owner has adequate notice that title to the property has been transferred for nonpayment of taxes. (*McCaslin v. Hamblen* (1951) 37 Cal.2d 196, 199 [231 P.2d 1].) In *Kaufman v. Gross & Co., supra,* 23 Cal.3d 750, payments due under a street lighting bond became delinquent. The property was sold to the defendants and a certificate of sale was recorded, but during the one-year redemption period before a tax deed could be issued to the defendants, the property was sold to the plaintiff. At the end of the redemption period, a treasurer's deed was issued to the defendants and the plaintiff brought an action to quiet title. We held, however, that the action was barred by the applicable statute of limitations, concluding that the plaintiff was not an owner in undisturbed possession because the certificate of sale to the defendants had been recorded more than a year before the grant deed was conveyed to the plaintiff. (*Id.* at p. 757.) Accordingly, the plaintiff in *Kaufman* was not "an owner in possession lacking any reasonable means of alerting himself to the tax proceedings affecting his property . . . the certificate of sale being of record at the time he received his deed and took possession." (*Id.* at p. 759.)

---

[3] All further undesignated statutory references are to the Revenue and Taxation Code.

Ordinarily, the circumstance that a property owner has failed to pay property taxes is sufficient to put the owner on notice that a tax sale might result. In *Sears v. County of Calaveras, supra*, 45 Cal.2d 518, we held that an action to declare invalid a deed issued to the state for nonpayment of taxes was barred by the statute of limitations. We rejected the plaintiffs' argument that the statute of limitations did not apply because they were in undisturbed possession of the property, stating: "There appears to be no reason why an owner of land, although in exclusive and undisputed possession, should not be required to be alert to protect his rights as against his own delinquency in the payment of taxes." (*Id.* at pp. 521–522.)

It is not invariably true, however, that the statute of limitations will run against a property owner who fails to pay property taxes. The Court of Appeal in *Atkins v. Kessler* (1979) 97 Cal.App.3d 784 [159 Cal.Rptr. 231] held that our decision in *Sears* did not apply to property owners who had failed to pay a special assessment for street improvements and had no actual notice of the tax sale proceedings. The court distinguished our decision in *Sears* on the ground that *Sears* involved "ordinary property taxes," while *Atkins* involved "a special street improvement assessment lien," observing that "the owner of real property can reasonably expect that his property will be taxed and that he will receive periodic notice thereof. In contrast, in the situation of a special assessment . . . notice is not expected as a routine matter. . . . Thus, unlike the situation of a property owner delinquent in ordinary real estate taxes, we do not believe that the very fact of the specially-assessed property owner's delinquency . . . operates to charge him ' "with notice that if he claims the invalidity of a tax deed . . . he must bring his action for that purpose within the statutory time." ' [Citation.]" (*Atkins v. Kessler, supra*, 97 Cal.App.3d 784, 791.)

■ The present case does not involve a special assessment of property taxes as in *Atkins*, but the circumstances of the present case still are analogous to the circumstances in *Atkins* because the Mayers had no actual notice and no reason to suspect that they were delinquent in paying their property taxes. The Mayers purchased a single piece of commercial property and received a single yearly tax bill for an appropriate amount of taxes, which they timely paid. They reasonably believed that paying the property tax bills they received from the assessor satisfied their obligation to pay property taxes. They had no reason to suspect that, due to errors committed by the assessor's office, a small portion of their property was being assessed separately and tax bills were being sent to a previous owner. Thus, as was the case in *Atkins*, the mere fact that the Mayers were delinquent on their property taxes on parcel 44 did not put them on notice and did not disturb their possession or trigger the running of the statute of limitations.

The first notice sent to the Mayers was the notice of the tax sale they received by certified mail on June 20, 2001, but this was insufficient to disturb their possession. The notice listed names unknown to the Mayers as the owners of the property, the legal description did not match the description on their yearly tax bill, and the notice instructed the Mayers to return the notice if they believed it had been sent to them in error. The Mayers did so, and heard nothing further until the Tax Collector's November 2, 2001 letter notified them that the property had been "sold at public auction for nonpayment of taxes" and, for the first time, listed the Mayers as the owners of the subject property. It was only at this point, in November of 2001, that the Mayers were put on notice sufficient to disturb their possession of the property and only at this point did the statute of limitations begin to run.

The Court of Appeal in the present case recognized that, under our decision in *Kaufman*, the statute of limitations would not run against an owner in "undisturbed possession," but concluded that the Mayers could not benefit from this rule because "they had actual notice of the tax sale when they received the Tax Collector's notice of excess proceeds on approximately November 2, 2001, within three months of the limitation period's triggering event—execution of the Tax Collector's deed at the time of the sale to L&B on August 6, 2001." The Court of Appeal held that the statute of limitations barred the Mayers' action because "[i]n the almost six months following that, the Mayers did nothing to regain title."

But the Court of Appeal answered the wrong question. The pertinent question is not whether the Mayers received adequate notice before the statute of limitations expired, because that presupposes that the statute of limitations had begun to run prior to the time that the Mayers received such notice. Under our decision in *Kaufman*, the statute of limitations against a jurisdictional attack on the tax deed could not begin to run while the owners were in undisturbed possession of the property. (*Kaufman v. Gross & Co., supra*, 23 Cal.3d 750, 755.) It is undisputed that the Mayers were in possession of the property at all relevant times. The crucial issue, therefore, is when their possession of the property was disturbed by adequate notice of the tax sale. As noted above, this happened when the Mayers received the Tax Collector's November 2, 2001 letter. Only then could the statute of limitations begin to run.

Thus, the statute of limitations set forth in section 3725 began to run when the Mayers received the November 2, 2001 letter, and it expired one year later. The Mayers' action to quiet title filed in October 2002, therefore, was timely.

## Disposition

The judgment of the Court of Appeal is reversed and the matter remanded for further proceedings consistent with the views expressed in this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Corrigan, J., concurred.